**ELZINGA & VOLKERS, INCORPORATED, Plaintiff–Appellee,**

v.

**LSSC CORPORATION and Leggett & Platt, Incorporated, Defendants–Appellants.**

No. 94–2941.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 9, 1995.

Decided Feb. 10, 1995.

Dane L. Tubergen, Hunt, Suedhoff, Borror & Eilbacher, Fort Wayne, IN, Larry A. Hanson, Moore, Costello & Hart, St. Paul, MN (argued), for plaintiff-appellee.

R. Frederick Walters, Karen D. Wedel, Thomas R. Davis (argued), Walters, Bender & Strohbehn, Kansas City, MO, for defendants-appellants.

* Hon. James C. Paine, of the Southern District of

Before FLAUM and EASTERBROOK, Circuit Judges, and PAINE, District Judge.*

EASTERBROOK, Circuit Judge.

Elzinga & Volkers, Inc. (E & V) was the general contractor for the construction of a factory to be owned and operated by No–Sag Products Corporation. The contract contains a broad arbitration clause, committing the parties to arbitrate "[a]ny controversy or claim arising out of or related to the Contract, or breach thereof". After the completion of the factory, No–Sag was merged into Lear Siegler Seymour Corporation (now known as LSSC Corporation). Later LSSC sold the assets of its No–Sag Division, including the factory, to Leggett & Platt, Incorporated (L & P). No–Sag, LSSC, and L & P in sequence claimed that E & V's work was subpar (the roof leaked, among other problems). Deeming E & V's repairs unsatisfactory, LSSC and L & P jointly served a demand for arbitration. E & V responded with this action to enjoin the arbitration, on the ground that it had promised to arbitrate only with No–Sag, which no longer exists.

Before too long E & V acknowledged that its position was untenable. A merger does not affect the existence of a corporation or the enforcement of its contracts. *United States Shoe Corp. v. Hackett,* 793 F.2d 161 (7th Cir.1986) (collecting authority in several states). No–Sag became a part of LSSC, which succeeded to all of its assets and liabilities, including the construction contract with E & V. Because E & V now concedes that it must arbitrate with LSSC, the district court properly denied LSSC's motion to compel arbitration. Such a step may have been appropriate earlier, when E & V was resisting, but is no longer necessary. If E & V reneges on its promise (repeated at oral argument in this court) there will be time enough to devise a remedy.

Once E & V acknowledged that it must arbitrate with LSSC, the district court should have denied E & V's request for an injunction. Under *AT & T Technologies, Inc. v. Communications Workers,* 475 U.S. 643, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986),

Florida, sitting by designation.

the court decides whether the party opposing arbitration must submit to the arbitrator's authority. Whether or not L & P joins LSSC as E & V's adversary in the arbitral proceedings, the arbitration will go on, and the court ought not regulate its details by injunction.

Just who is E & V's proper opponent depends in large measure on the meaning of a clause in the contract. Paragraph 13.2.1 says that the "Owner and Contractor respectively bind themselves ... to the other party hereto and to partners, successors, assigns and legal representatives of such other party". Both LSSC and L & P told the district judge that the sale of the No–Sag Division from LSSC to L & P included LSSC's entitlement to enforce E & V's warranty, an assignment that would permit L & P to arbitrate. E & V responded by relying on another sentence stating that "[n]either party to the contract shall assign the Contract as a whole without written consent of the other." The district court thought this no bar to L & P's participation because assigning the right to enforce a warranty after the structure has been erected does not "assign the Contract as a whole". Nonetheless, the judge concluded, LSSC had not assigned warranty enforcement to L & P, and on this basis the judge enjoined L & P from arbitrating with E & V. 852 F.Supp. 681 (N.D.Ind.1994).

■ The meaning of the language requiring consent to the assignment of the contract "as a whole" is the sort of "controversy or claim arising out of or related to the Contract" that E & V has agreed to arbitrate. The district court should not have interpreted the assignment language but should have allowed the arbitrator to do so.

■ Whether LSSC has transferred its entitlements to L & P is something that *neither* arbitrator nor judge should decide. The resolution of this controversy depends on the LSSC–L & P contract, not the construction contract, and therefore is outside the arbitrator's purview. As for the court: when parties to a contract agree on its meaning—as LSSC and L & P agree that the warranty has been assigned—there is no dispute requiring resolution. A third-party

beneficiary of a contract is entitled to enforce its genuine terms, even if the authors belatedly recharacterize the meaning of their language, but E & V is not remotely a third-party beneficiary of the sale of the No–Sag Division. And that is not all.

■ After the district judge held that the papers implementing the sale did not transfer the warranty (because they did not mention it expressly), LSSC and L & P signed another contract assigning the warranty explicitly. The district court refused to consider this because it was, the court said, newly created rather than newly discovered evidence, and therefore could not be presented on a post-judgment motion under Fed. R.Civ.P. 60(b). If this were an action for damages there might be a point to the district court's distinction, but in an action for an injunction the court must deal with a motion for modification or vacatur in light of the facts as they exist at the time of the motion. That a litigant is entitled to equitable relief on Monday does not mean that the injunction should continue to Tuesday, if vital facts change. By the district court's own lights, essential facts had changed.

■ At oral argument in this court E & V asserted that the post-injunction assignment is invalid for want of consideration. This, too, is not the kind of argument a stranger to the bargain may present. LSSC and L & P treat their new bargain as clarifying the old one; no new consideration is required for such a step. But let us suppose that LSSC has made a gift of the warranty to L & P. What concern is that of E & V, as opposed to, say, LSSC's investors, who might cry "waste of corporate assets"? If a father gives a new General Motors car to his son as a graduation present, GM cannot refuse to repair defects by contending that the transfer lacked consideration!

■ Behind all of the maneuvering lies E & V's belief that the sale of the No–Sag Division greatly diminished (or even abolished) its warranty obligations. E & V tells us that it owes L & P nothing because L & P bought the factory "as is" and that it owes LSSC a pittance at best because LSSC can-

not prove how much the price of the No–Sag Division was depressed by the building's shortcomings. L & P replies that a sale "as is" means only that the buyer abjures remedies against the seller, not that the buyer forswears remedies against vendors and other third parties. LSSC points out that the cost of repairs is the best measure of the amount by which the price of No–Sag's assets fell. Maybe; if L & P would have paid an extra $50,000 for a leak-proof building, but it would cost $500,000 to fix the roof, there could be a disparity—but in that case E & V's maximum liability to either LSSC or L & P should be $50,000. A warranty does not require a seller to expend more than the market value of the repairs to fix the product. At all events, how much E & V owes is a question for the arbitrator; and who gets any payment is a question for LSSC and L & P to work out between themselves. The injunction against the arbitration is

REVERSED.