In the

# United States Court of Appeals
## For the Seventh Circuit

No. 01-1253

WELBORN CLINIC, an Indiana Business Trust doing
business as WELBORN CLINIC,

*Plaintiff-Appellant,*

*v.*

MEDQUIST, INCORPORATED,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Southern District of Indiana, Evansville Division.
No. EV 00-95-C-Y/H—**Richard L. Young**, *Judge.*

ARGUED OCTOBER 31, 2001—DECIDED AUGUST 29, 2002

Before BAUER, COFFEY, and DIANE P. WOOD, *Circuit
Judges.*

DIANE P. WOOD, *Circuit Judge.* Welborn Clinic entered
into a contract with MedQuist, Inc., under which MedQuist
agreed to perform medical transcription services for Wel-
born. Disputes quickly arose over the methods MedQuist
used to count the lines it transcribed for billing purposes.
Eventually, Welborn filed suit asserting breach of contract,
fraud, deceptive trade practices, and conversion. The dis-
trict court determined that all of Welborn's claims were

subject to arbitration under the contract's dispute resolu-
tion clause and dismissed the complaint. Because we find
that the narrow arbitration clause covers only some of
Welborn's claims, we affirm in part and reverse the remain-
der of the district court's judgment and remand for further
proceedings.

# I

To create the medical records necessary for patient care,
a medical facility must transcribe the reports, notes, and
summaries dictated by health care professionals. In De-
cember 1998, Welborn, which historically had transcribed
in-house, entered into a written contract with The MRC
Group, Inc., under which MRC agreed to perform all tran-
scription services on behalf of Welborn at a charge of 13.2
cents per line transcribed. The form contract was supplied
by MRC. Under the heading "Payments and Charges" the
contract included § 3.5, labeled "Dispute Resolution," which
provided in its entirety:

> In the event that any invoice amount is disputed by
> Client, Client shall deliver written notice of such dis-
> puted amount to Vendor within ten (10) days of receipt
> of the invoice by Client. In the absence of Client time-
> ly providing said written notice, Client waives any right
> to dispute said invoice in the future. Vendor shall
> promptly deliver to Client any backup or other informa-
> tion which supports the correctness of such disputed
> amount. Upon receipt of such information, Client shall
> have ten (10) days in which to examine such informa-
> tion and to pay to Vendor any portion of such disputed
> amount which Client, in its sole discretion, has deter-
> mined to be substantiated. Thereafter, if any dispute
> still remains with respect to any amount, Vendor and
> Client shall immediately enter into good faith negotia-
> tions to resolve it. In the event the parties are unable to

resolve such dispute within ten (10) days of entering into negotiations, the dispute shall be settled by arbitration in accordance with the commercial arbitration rules of the American Arbitration Association. Such arbitration shall be conducted in the State of Ohio. The decision reached through arbitration shall be final and binding on both parties.

Soon thereafter, MedQuist acquired MRC and succeeded to all its rights and obligations under the contract.

MedQuist began performing under the contract on March 23, 1999. Almost immediately, Welborn challenged the methods MedQuist was using to count the number of lines transcribed and to calculate its charges. Welborn believed both that MedQuist was inflating its line count and that it had misrepresented key elements of its counting and billing practices before entering into the contract. This prompted Welborn to initiate the dispute resolution procedure by delivering written notice of its disputes to Med-Quist and requesting backup information. MedQuist refused to provide any backup. When Welborn subsequently withheld payment of the disputed invoices in October 1999, MedQuist stopped performing under the contract and refused to return any medical records it had in its possession. After several rounds of squabbling, Welborn exercised its right to cancel the contract.

On May 3, 2000, Welborn filed a complaint in the district court alleging breach of contract (Count I), fraud (Counts II, III, and IV), deceptive trade practices (Count V), and conversion (Count VI). It also sought declaratory relief requiring MedQuist to return Welborn's medical records. At a pretrial conference, MedQuist agreed to turn over those records and then moved to dismiss the complaint and compel arbitration. The district court granted MedQuist's motion in its entirety. Welborn appeals, claiming both that MedQuist waived its right to arbitration through its pre-litigation

conduct and that some of Welborn's claims are not subject to the narrow arbitration provision.

## II

Like any other contractual right, the right to arbitrate a claim may be waived. *Grumhaus v. Comerica Sec., Inc.*, 223 F.3d 648, 650 (7th Cir. 2000). We will find waiver when "based on all the circumstances, the party against whom the waiver is to be enforced has acted inconsistently with the right to arbitrate." *Id.* at 650-51 (citations and internal brackets omitted). Welborn contends that MedQuist has waived its right to arbitrate through a series of delay tactics and its refusal to participate in informal dispute resolution.

Welborn first claims that MedQuist's delay tactics are a form of foot-dragging that is inconsistent with the agreement's otherwise valid arbitration clause. A party may waive its contractual right to arbitration either explicitly or through an implicit course of conduct. *Grumhaus*, 223 F.3d at 650; *Hammes v. AAMCO Transmissions, Inc.*, 33 F.3d 774, 783 (7th Cir. 1994). Welborn argues that MedQuist's withholding of medical records, termination of service, and rejection of attempts informally to negotiate the dispute constitute implied waiver. The only two cases it cites for this proposition, however, are *Grumhaus* and *Hammes,* both of which involved situations where the party seeking arbitration had originally filed suit in a judicial forum. *Grumhaus*, 223 F.3d at 649; *Hammes*, 33 F.3d at 777. Litigating a claim is clearly inconsistent with any perceived right to arbitration; we do not want parties to forum shop, taking a case to the courts and then, if things go poorly there, abandoning their suit in favor of arbitration. But MedQuist never sought to litigate this case in either state or federal court, never resisted any demands by Welborn to submit to arbitration, and moved to compel arbitration less than two months after the lawsuit was filed. Such

conduct seems entirely consistent with a firm commitment to arbitrate.

It is true that lengthy delay can lead to an implicit waiver of arbitration. *Grumhaus*, 223 F.3d at 651. But such delay is normally evidenced by substantial participation in the opposing party's litigation. See *Cabinetree of Wis. Ltd. v. Kraftmaid Cabinetry, Inc.*, 50 F.3d 388, 390 (7th Cir. 1995) (removal of case to federal court); *St. Mary's Med. Ctr. of Evansville, Inc. v. Disco Aluminum Prods. Co.*, 969 F.2d 585, 587, 590-91 (7th Cir. 1992) (five months of discovery). Here MedQuist moved to compel on June 23, 2000, less than eight months after its initial demand for payment was refused and less than eight weeks after the complaint was filed. Self-help efforts, such as selling goods that another party has refused, have also been found to be consistent with a desire to arbitrate. *Southwest Indus. Import & Export, Inc. v. Wilmod Co.*, 524 F.2d 468, 470 (5th Cir. 1975). This suggests that even strong-arm tactics like the withholding of important medical records while demanding payment are not automatically enough to constitute an implied waiver of the agreement's arbitration provision.

Welborn also argues that MedQuist's failure to follow the explicit steps of § 3.5 dictates that it cannot now move for arbitration. Since MedQuist did not promptly deliver to Welborn any backup information to support the correctness of its disputed amounts or enter into good-faith negotiations with Welborn, Welborn argues, it should not now be permitted to jump ahead to arbitration, the final step in the dispute resolution process.

The district court found that the other steps listed in § 3.5 were not conditions precedent to arbitration. As MedQuist points out, breach of a contract containing an arbitration clause does not amount to a waiver of arbitration. *Local Union No. 721, United Packinghouse, Food & Allied Workers, AFL-CIO v. Needham Packing Co.*, 376 U.S. 247, 251

(1964). While it is certainly true that an ordinary breach cannot constitute a rejection of arbitration, *Needham* and its progeny do not speak to the specific situation where the party seeking arbitration has allegedly breached a part of the arbitration clause itself. One could at least argue that when the party breaches that provision it is acting inconsistently with its right to arbitrate and therefore cannot later obligate the non-breaching party to arbitrate claims. In that respect, the steps in § 3.5 could be viewed as similar to steps in a labor grievance process, where unions and employers must either exhaust a complex range of internal procedures or demonstrate the futility of such remedies before either may seek third-party resolution. See, *e.g.*, *Clayton v. International Union, United Auto., Aerospace & Agric. Implement Workers of Am.*, 451 U.S. 679, 686 (1981); *Hammer v. International Union, United Auto., Aerospace & Agric. Implement Workers of Am.*, 178 F.3d 856, 858 (7th Cir. 1999). Based on the pleadings, MedQuist here failed to pursue any form of negotiation between the parties but instead jumped straight to arbitration.

In the labor context, Congress has voiced a strong preference for non-judicial resolution of employment disputes. *Clayton*, 451 U.S. at 686. Here too it has expressed through the Federal Arbitration Act a strong presumption in favor of alternative dispute resolution. *Green Tree Fin. Corp. v. Randolph*, 531 U.S. 79, 89 (2000). In a close case, this may make all the difference. Outside the union context, we have found no federal cases addressing this problem. Under Indiana law, which both parties quote and which they apparently agree should cover contract interpretation issues, parties to an arbitration agreement may make the right to seek arbitration subject to a condition precedent. *Chesterfield Mgmt., Inc. v. Cook*, 655 N.E.2d 98, 102 (Ind. Ct. App. 1995). If there is a condition precedent, it must be met before a court may compel arbitration. On the other hand, a party cannot avoid arbitration because of the other party's

failure to comply with the negotiation steps of a grievance procedure as long as that other party acted in good faith to preserve its right to arbitration. *St. John Sanitary Dist. v. Town of Schererville*, 621 N.E.2d 1160, 1163 (Ind. Ct. App. 1993). In *St. John*, the party resisting arbitration argued that its opponent had failed to meet the technical requirements of an arbitration provision by failing to bargain, to provide written demand for arbitration within specified time limits, or to supply the names of arbitrators. The court construed the agreement in favor of arbitration, finding that the defendant need only act in good faith in moving for arbitration; the failure to meet time limits or other technical provisions would not forfeit the right. *Id.* at 1163-64.

Based on Indiana law and the general presumption in favor of arbitration, we find that the time limits and requirements to provide backup in this case were not conditions precedent to MedQuist's contractual right to compel arbitration and that MedQuist has not waived this right. Indeed, the purpose of § 3.5 is undoubtedly to encourage successful negotiations so that neither litigation nor arbitration will be necessary, not to prefer the courts to an arbitrator if informal discussions break down.

## III

As noted above, § 3.5 provides for the arbitration of disputes over "any invoice amount." The district court ordered all of Welborn's claims to arbitration because it believed that the entirety of Welborn's complaint was founded on an invoice dispute. Welborn, however, contends that the district court read the agreement's dispute resolution provision too broadly and should not have submitted some of its claims to arbitration. It specifically contends that Count I (breach of contract), Count IV (constructive fraud), Count V (deceptive trade practices), and Count VI (conversion) are

not covered by § 3.5 and must be considered by the district court.

Whether an issue is subject to arbitration is a simple matter of contract interpretation. *Kiefer Specialty Flooring, Inc. v. Tarkett, Inc.*, 174 F.3d 907, 909 (7th Cir. 1999). If the contract is ambiguous, "doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983); *Miller v. Flume*, 139 F.3d 1130, 1136 (7th Cir. 1998). Therefore, a court should compel arbitration "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582-83 (1960). Despite this strong pro-arbitration tilt, agreements must not be construed so broadly as to force arbitration of claims that the parties never agreed to submit to arbitration. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995); *AGCO Corp. v. Anglin*, 216 F.3d 589, 593 (7th Cir. 2000)

The district court accepted MedQuist's contention that the entire controversy is simply a glorified billing dispute and that all of Welborn's claims "arise out of" the "core allegation" that MedQuist has been overcharging the amounts on its invoices. Thus, whether Welborn wishes to put one label or six on its claim, the court concluded that it is all part of the same dispute and therefore arbitrable in its entirety.

In turning to the contract we are required to interpret, we agree with Welborn that the arbitration language in § 3.5 is far narrower than that at issue in all of the cases mentioned above and cited by MedQuist. In each of those decisions, the contract in question contained a very broad, standard arbitration clause, similar to that recommended by the American Arbitration Association, requiring that "all controversies and claims" either "arising out of" or "relating

to" the contract would be settled by arbitration. See, *e.g.*, *Kiefer*, 174 F.3d at 909; *Matthews v. Rollins Hudig Hall Co.*, 72 F.3d 50, 54 (7th Cir. 1995). Under these circumstances, we have naturally been willing to read these admittedly expansive clauses quite broadly to include all manner of claims tangentially related to the agreement, including claims of fraud, misrepresentation, and other torts involving both contract formation and performance. *Kiefer*, 174 F.3d at 909-10.

The arbitration clause here does not provide for the resolution of all controversies and claims relating to the contract; indeed, it does not even provide for the resolution of all controversies and claims relating to or arising out of billing, the interpretation the district court appears to have accepted. Instead, the provision is buried near the end of a section labeled "Payments and Charges." That portion of the contract establishes the rates MedQuist will charge, prohibits price increases for the first two years, provides for billing twice per month, and sets out terms of payment. After all this comes the provision dealing with disputed "invoice amounts." It states that if, after attempts at negotiation have failed, "any dispute still remains with respect to any amount . . . the dispute shall be settled by arbitration." Other parts of the contract, discussing matters such as turnaround time and quality assurance standards, provide that if disputes under those sections are not resolved, either party may cancel the agreement, but these sections make no mention of arbitration. See §§ 1.2, 5.6.

While the strong presumption in favor of arbitration compels us to construe § 3.5 broadly, we cannot push it as far as MedQuist would prefer while still making sense of the agreement. The parties here did not—either intentionally or through carelessness—employ the nearly universal language recommended by the American Arbitration Association and referred to in countless court decisions that would obviously have encompassed all of Welborn's claims in this

case, since all of them arise out of or relate to the contract. Instead, the parties restricted the use of arbitration to the narrow question of the amount of money Welborn owes MedQuist under the invoices. *Cf. Bradford Scott-Data Corp. v. Physician Computer Network, Inc.*, 136 F.3d 1156, 1158 (7th Cir. 1998) (contrasting narrowness of provision requiring arbitration of "any payment dispute" with expansive "arising out of or relating to" language). To hold, as Med-Quist urges, that any issue tangentially related to billing must be arbitrated would do violence to the contract language by leaving the words "invoice amount" devoid of meaning. If the parties intended to arbitrate all claims "related to" or even "arising out of" invoice disputes, then why not simply say that? While arbitration should decide such questions as the definition of a transcription line and how much Welborn is obligated to pay under the agreement itself, any claims accusing MedQuist of conduct that would be actionable independent of the amount Welborn owes MedQuist may proceed in a judicial forum.

Under this standard, some of Welborn's claims are clearly arbitrable and must be stayed. For example, Counts II and III allege that MedQuist committed fraud (in the inducement and in the factum) through various misrepresentations of the number of lines it had transcribed and the intentional billing of Welborn for a substantially greater amount. To prevail on either of these claims Welborn must demonstrate that MedQuist overbilled it, and therefore it must win, if anywhere, at arbitration. Similarly, to the extent Count I alleges that MedQuist breached the contract through overcharging, that claim too is arbitrable.

However, Welborn has also alleged in Count I that Med-Quist breached the contract by stopping service, failing to meet turnaround times, and retaining untranscribed dictation. Such actions would violate MedQuist's delivery obligations under § 1.2, a section of the agreement that has absolutely nothing to do with invoice amounts and makes

no mention of arbitration. It is true that MedQuist's defense might be that it only stopped service because Welborn stopped payment, but looking only at the complaint, the amount of the invoice is not in dispute and the claim is not subject to arbitration.

Similarly, Count VI alleges that MedQuist unlawfully retained medical records that are the property of Welborn and temporarily converted them to its own use. These allegations state a valid claim under Indiana law. *Computers Unlimited, Inc. v. Midwest Data Sys., Inc.*, 657 N.E.2d 165, 171 (Ind. Ct. App. 1995). Indeed, unless MedQuist is entitled to some kind of common law or statutory lien over medical records, its refusal to return the records in its possession could violate the law even if its bills were entirely accurate and are ruled enforceable by the arbitrator. While MedQuist's conduct certainly arose out of a dispute over "invoice amounts," the claim itself is not an invoice dispute and therefore cannot be compelled to arbitration.

In Count V, Welborn complains that MedQuist violated the Indiana Deceptive Consumer Sales Act. Ind. Code §§ 24-5-0.5-1, *et seq*. The Act prohibits a vendor from falsely representing that a transaction has certain characteristics or will provide the purchaser with specific price advantages. *Id.* § 24-5-0.5-3(a). The complaint alleges that MedQuist's misrepresentation of its method for counting transcribed lines constituted an act of deception which violated the Act. If MedQuist did make such misrepresentations, the fact that it then accurately billed on its invoices in accordance with the terms of the contract is irrelevant. MedQuist cites to cases indicating that claims of fraud in making a contract may be subject to arbitration, see *Kroll v Doctor's Assocs., Inc.*, 3 F.3d 1167, 1170 (7th Cir. 1993*); Sweet Dreams Unlimited, Inc. v. Dial-A-Mattress Int'l, Ltd.*, 1 F.3d 639, 643 (7th Cir. 1993), but that is not the point. An allegation of fraud in making or inducing an agreement clearly "relates to" that agreement and can be encompassed by a

broad arbitration clause. But as this narrow clause has no "relates to" or even "arising out of" language, the district court is free to proceed to the merits (which seem dubious to us, though we make no ruling on the point, as the Act's provisions apparently apply only to individual consumers, see *Classic Car Centre, Inc. v. Haire Mach. Corp.*, 580 N.E.2d 722, 723 (Ind. Ct. App. 1991)).

Finally, Count IV alleges that MedQuist constructively defrauded Welborn through its misrepresentation of the amount it charged for its services. Welborn alleges that this misrepresentation caused it to abandon in-house transcription and permitted MedQuist to overcharge. Constructive fraud in Indiana is a theory used to abate the purchase price of a valid contract where one party, by means of the contract, has obtained an unconscionable advantage over the other. See *Stoll v. Grimm*, 681 N.E.2d 749, 757 (Ind. Ct. App. 1997). Whether MedQuist's bills were inflated or not is thus irrelevant. What matters for our purposes is that the misrepresentations put MedQuist in a position where it could later force Welborn to retain its services. Because the claim again deals with matters relating to billing but not to invoice disputes themselves, Count IV as well is not within the scope of the arbitration clause.

## IV

Finally, MedQuist argues that Welborn's surviving fraud claims should be dismissed for failure to plead with the specificity required by Rule 9(b), which provides that, "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." While this point was raised below, the district court did not rule on it because it dismissed the complaint for other reasons. The district court will have numerous other matters to sort out and may wish to stay its proceedings pending resolution of the invoice disputes being sent to

arbitration. Furthermore, Welborn still has the right under Rule 15 to replead its complaint with greater specificity (since MedQuist has yet to file a responsive pleading), even in the event of dismissal. For these reasons, we decline to address this dispute and leave it to the district court to consider on remand.

MedQuist's motion to strike the reply brief is denied. The district court's order compelling arbitration of Counts II and III and the portion of Count I alleging breach through over-charging is AFFIRMED. As for the remainder of Count I and Counts IV, V, and VI, the judgment is REVERSED and the case is REMANDED for further proceedings.

A true Copy:

      Teste:

 

                    _____
                    *Clerk of the United States Court of*
                    *Appeals for the Seventh Circuit*

USCA-97-C-006—8-29-02