Connolly, Thomas E., J.
Plaintiff Elizabeth M. Tamposi (“Elizabeth”), brought this action for breach of fiduciary duty of utmost good faith and loyalty and seeks, among other actions, to compel Defendant Ballinger Properties, LLC (“Ballinger”), as manager of Defendant Tamposi LLC (“Tamposi”), to exercise a put option agreement for the sale of shares in the Red Sox. Specifically, Elizabeth requests an injunction directing Ballinger to “take all steps reasonably necessary to sell one-sixth of the Class B Units . . . pursuant to the Put Agreement.” Samuel A. Tamposi (“Samuel”) and Stephen A. Tamposi (“Stephen”) are managers of Ballinger. Tamposi, Ballinger, and Samuel (collectively “Defendants”) filed a motion to compel arbitration and stay the proceedings.[3] Defendants argue that Ballinger’s Limited Liability Company Agreement (“Ballinger Agreement”) requires arbitration of this dispute. In response, Elizabeth argues that Tamposi’s Operating Agreement, which does not contain an arbitration clause, but contains a forum selection clause, controls. For the reasons discussed below, Defendants’ motion to compel arbitration and stay proceedings is DENIED.
BACKGROUND
Samuel A. Tamposi, Sr. created a 1992 Trust and a 1992 Exempt Trust (“Trusts”). These Trusts consist of twelve subtrusts established for the benefit of his six children, Samuel, Michael, Celina, Stephen, Jr., Elizabeth, and Nicholas. Samuel and Stephen were named Investment Directors of the Trusts and the subtrusts, including the Elizabeth M. Tamposi GST Trust and the Elizabeth M. Tamposi Trust (“Elizabeth M. Tamposi Trusts”).
Ballinger was created on April 11, 1994 to “acquire, hold for investment, manage and dispose of real property investments, and to undertake such other activities as may reasonably be necessary or incidental to the achievement of such purpose.” Samuel, MAT Trust, Elizabeth, NET Trust, Celina Tamposi, and Stephen were named as Members. Management of Ballinger was vested in Stephen and Samuel. Section 7.2 of the Ballinger Agreement gives the Managers the *616 “sole and exclusive right to manage the Company.” Section 22.9 of the Ballinger Agreement requires that “[a]ny claim or controversy arising out of or relating to this Agreement or breach hereof shall be submitted to and settled by arbitration in the State of New Hampshire ...”
Tamposi was created on February 8, 2002 to “acquire, own, hold and dispose of interests in the New England Sports Ventures, LLC (“NESV”) . . . and through such acquisition, ownership, holding and disposition participate as the holder of Class B Units in NESV in the ownership of the Boston Red Sox Baseball franchise of Major League Baseball and in the ownership of the New England Sports Network.” The Tamposi Operating Agreement (“Tamposi Agreement”) named Samuel as the Manager and Samuel, the Samuel A. Tamposi, Sr. 1992 Trust, and the Samuel A. Tamposi, Sr. 1992 Exempt Trust as the Members.
Article VI, Section 6.1 of the Tamposi Agreement states that the Managers have “the exclusive right to manage the Company’s business. Accordingly, except as otherwise specifically limited under applicable law, the Managers shall: (i) manage the affairs and business of the Company; (ii) exercise the authority and powers granted to the Company; and (iii) otherwise act in all other matters on behalf of the Company . . . The Managers shall take all actions which shall be neces-saiy or appropriate to accomplish the Company’s purpose.” Article XI, Section 11.1 of the Tamposi Agreement states: “This Agreement embodies the entire understanding among the Members concerning the Company and their relationship as Members and supersedes any and all prior negotiations, understandings or agreements.” Finally, Article XI, Section 11.5 states:
The laws of the State . . . shall govern the construction and application of this Agreement. The Members irrevocably agree that all actions or proceedings, at law or in equity, in any way, manner or respect, arising out of or from or related to this Agreement shall be litigated only in the state or federal courts having sitting [sic] within Suffolk County of the State. Each Member hereby consents and submits to the jurisdiction of such courts, hereby waives any rights it may have to transfer or change the venue of any such action or proceeding, and covenants and agrees not to allege in any such action or proceeding brought in such a court that such a court does not have jurisdiction over the person or property of such Member, or is an inconvenient forum for the adjudication of such action or proceeding.
Samuel acquired a ten percent membership interest in Tamposi and agreed to act as the Manager of Tamposi so as “to expedite the clearance and approval of the Office of the Commissioner of Baseball of Tamposi LLC as the purchaser of an interest in FMBC I, the entity designed to purchase the Boston Red Sox franchise.”
On February 27, 2002, Tamposi became the record and beneficial owner of 50 Class B Units of FMBC LLC.[4] Tamposi also acquired the right to require FMBC LLC to purchase up to 50 shares of such Units (“Put Option”) from Tamposi during the “Put Exercise Period.” See Put Option Agreement, Article II, Section 2.01. Article I, Section 1.01 defines the “Put Exercise Period” as “the first 90 days of each calendar year, with the first 90-day period commencing following the first anniversary of the date of the closing of the Acquisition and expiring at 5:00 p.m., New York time on the last day of the 90-day period following the fifth anniversary of the date of the closing of the Acquisition.” Consequently, the Put Option will expire on March 31,2008.
On February 28, 2002, Samuel assigned his ten-percent membership interest in Tamposi to Ballinger. He also withdrew as a Member and resigned as Manager. The Members then selected and elected Ballinger as Manager of Tamposi. The Assignment stated that Ballinger “hereby accepts and adopts all of the provisions of the Operating Agreement of Tamposi LLC.”
In September 2006, the Tamposi siblings entered into a Settlement Agreement. Number 3, Part V(l)(iii) of the Settlement Agreement stated that Samuel and Stephen would resign as Investment Directors of the Elizabeth M. Tamposi Trusts with respect to all of those assets owned by the Trusts, except “Tamposi LLC (interest in Boston Red Sox).”
DISCUSSION
“Where the relevant contract contains a broad arbitration provision, the [Federal Arbitration] Act precludes litigation ‘unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.’ ” Championsworld, LLC v. United States Soccer Federation, Inc., 487 F.Sup.2d 980, 985 (N.D.Ill. 2007), quoting Welborn Clinic v. MedQuist, Inc., 301 F.3d 634, 639 (7th Cir. 2002); see also Bank Julius Baer & Co. v. Waxfield Ltd., 424 F.3d 278, 284 (2d Cir. 2005) (holding that if there is a reading of the various agreements that permits an arbitration clause to remain in effect, the court has to choose it); Personal Security & Safety Systems, Inc. v. Motorola, Inc., 297 F.3d 388, 392 (5th Cir. 2002) (holding that the courts resolve doubts concerning the scope of coverage of an arbitration clause in favor of arbitration). While the Federal Arbitration Act embodies a strong federal policy in favor of arbitration, arbitration is contractual in nature and a party cannot be required to arbitrate a dispute he has not agreed to arbitrate. Championsworld, LLC, 487 F.Sup.2d at 985 (citation omitted); see also Fit Tech, Inc. v. Bally Total Fitness Holding Corp., 374 F.3d 1, 10 (1st Cir. 2004) (“No one can seriously argue that [arbitration] clauses can be plucked at random from one agreement and inserted into the other”).
*617 “To ascertain whether the parties have agreed to arbitrate a particular claim, we must determine ‘(1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement.’ ” Personal Security & Safety Systems, Inc., 297 F.3d at 392, quoting OPE Int’l LP v. Chet Morrison Contractors, Inc., 258 F.3d 443, 445 (5th Cir. 2001).
The Ballinger Agreement contains a valid arbitration provision. Thus, the question is whether that arbitration provision covers the claim at issue here which arises out of the Tamposi Agreement. The arbitration clause in the Ballinger Agreement states that “(a]ny claim or controversy arising out of or relating to this [Ballinger] Agreement or breach hereof shall be submitted to and settled by arbitration.” See Personal Security & Safety Systems, Inc., 297 F.3d at 393 (citations omitted) (indicating that when an arbitration provision purports to cover all disputes “related to” or “connected with” the agreement, courts have held that the arbitration provision is not limited to claims that literally “ ‘arise under the contract,’ but rather embraces all disputes between the parties having a significant relationship to the contract regardless of the label attached to the dispute”). Defendants argue that the arbitration provision in the Ballinger Agreement applies to Elizabeth’s claims relating to the Tamposi Agreement because Tamposi is under the control and direction of Ballinger. Specifically, because only Ballinger, as manager of Tamposi, has the abiliiy to sell the Red Sox shares, Elizabeth is bound to the Ballinger Agreement which contains an arbitration provision. While Ballinger is the manager of Tamposi, this Court finds that the dispute regarding the Red Sox shares held pursuant to the Tamposi Agreement does not arise out of or relate to the Ballinger Agreement nor does it have a “significant relationship” to the Ballinger Agreement.
Ballinger was created in 1994 to “acquire, hold for investment, manage and dispose of real property investments, and to undertake such other activities as may reasonably be necessary or incidental to the achievement of such purpose.” Tamposi was created in 2002 to acquire shares of the Red Sox. The agreements were not executed contemporaneously and neither was executed with the other in mind. See Personal Security & Safety Systems, Inc., 297 F.3d at 390 (holding that a licensing agreement’s arbitration provision governed claims arising out of a stock purchase agreement because the agreements were executed together as part of the same overall transaction). In addition, the Ballinger Agreement was not “essential” to acquiring Red Sox shares particularly considering that Ballinger was not the initial manager of Tamposi and, when Ballinger agreed to become manager, it accepted and adopted all of the provisions of the Tamposi Agreement. See Personal Security & Safety Systems, Inc., 297 F.3d at 395 (“[WJhere the parties include a broad arbitration provision in an agreement that is ‘essential’ to the overall transaction, we will presume that they intended the clause to reach all aspects of the transaction — including those aspects governed by other contemporaneously executed agreements that are part of the same transaction”). Consequently, Ballinger’s arbitration provision does not apply to disputes concerning the Red Sox shares.
ORDER
For the reasons discussed above, it is hereby ORDERED that Defendants’ motion to compel arbitration and stay proceedings is DENIED.

Tamposi, Ballinger Properties, and Samuel also filed a Motion to Dismiss Based on Settlement Agreement and Fomm Non Conveniens and a Motion to Dismiss for Failure to State a Claim. These motions are DENIED. In addition, Stephen A. Tamposi filed a Motion to Dismiss for Lack of Personal Junsdiction. This motion is DENIED without prejudice.

FMBC, LLC subsequently changed its name to NESV.