**Valkyrie E. HALL, et al., Plaintiffs**

v.

**INTERNET CAPITAL GROUP, INC., Ronald Hovsepian, Mark Lotke, David Chu, and Robert Burch, Defendants**

No. CIV.02–255–P–C.

United States District Court,
D. Maine.

Oct. 1, 2004.

Glenn Israel, Bernstein, Shur, Sawyer, & Nelson, David Soley, Bernstein, Shur, Sawyer, & Nelson, Portland, ME, for All Plaintiffs, John Bielenberg, James N. Charle, Susan O'Brien, Jonathan E. Paul, Karyl Paul, Adrian Wenteworth-Stanley, Plaintiff.

David Soley, Bernstein, Shur, Sawyer, & Nelson, Portland, ME, for Stephen Archer, Christopher Bebee, Deanna L Bielenberg Jack D. Bullock, Michael K. Bullock, Sally Bullock, Jennifer Faith Collins, Corning Capital Ventures, LLC, Corning Partners III Ltd. Partnership, DRT Co., Dwight B. Corning Trust, Enertech Associated Ltd., Eve M. Corning #3 Trust, Barbara J. Fendler, Nancy E. Fendler, Ryan D. Fendler, Fender Grandchildren's Trust, Peter E. Guistra, Mark Haas, Daniel I. Hall, Valkyrie E. Hall, Harry M. Henderson, Hibiya Trust, Robert Francis Huddie, John Does 1-20, Bruce Leiter, Little River Baptist Church, Marie Underwood Trust, James Maxmin, Nathan E. Corning Family Trust, Nathan E. Corning Fund 8C, Nathan E. Corning Fund 8E, Carmel Peters, Martin Petherick, Ted James Porter, Guy Rowan-Hamilton, Julian Sainty, Makoto Sakai, Steel Pro Inc Defined Benefit Pension Trust, Plaintiffs.

Steven B. Feirson, Dechert, Price & Rhoads, Philadelphia, PA, Joseph H. Groff, III, Brendan P. Reilly, Jensen, Baird, Gardner & Henry, Portland, ME, Kathleen N. Massey, Dechert, LLP, New York, NY, for Robert Burch, Ronald Hovesepian, Internet Capital Group Inc., Mark Litke, Defendants.

Michael A. Cunniff, Mccloskey, Mina & Cunniff, LLC, Portland, ME, Mark Lane, Koo, Larrabee, Lau–Koo & Lane, LLP, White Plains, NY, for David Chu, Defendant.

Steven M. Bauer, Brett C. Collins, Latham & Watkins, LLP, San Francisco, CA, Thomas E. Duley, Latham & Watkins, LLP, Menlo Park, CA, Robert S. Frank, Harvey & Frank, Portland, ME, for Freeborders.Com Inc, Defendant.

Steven B. Feirson, Dechert, Price & Rhoads, Philadelphia, PA, Joseph H. Groff, III, Jensen, Baird, Gardner & Henry, Portland, Kathleen N. Massey, Dechert, LLP, New York, NY, Brendan P. Rielly, Jensen, Baird, Gardner & Henry, Portland, for Mark Lotke, Defendant.

## ORDER GRANTING PLAINTIFFS' MOTIONS TO STAY ACTION PENDING ARBITRATION OF CLAIMS

GENE CARTER, Senior District Judge.

This case comes before the Court for the second time on a motion to compel arbitration. Plaintiffs Valkyrie E. Hall, *et al.* bring this motion pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, to compel Defendants Internet Capital Group ("ICG"), Robert Burch, and David Chu to arbitrate all claims raised in the Amended Complaint. Plaintiffs ask this Court to order arbitration in accordance with a clause in a Purchase Agreement, under which Defendants obtained a majority interest in a closely held Maine corporation, Animated Images, Inc. *See* Plaintiffs' Motion to Compel Arbitration and for Continued Stay (Docket Item No. 75). The Court previously submitted all claims arising out of a separate, subsequent Merger Agreement to arbitration. *See* Order Granting Defendants' Motion to Stay Action Pending Arbitration of Claims (Docket Item No. 34).

## I. Facts

■ Plaintiffs' claims arise out of an October 1999 Purchase Agreement through which Defendants ICG, Burch,[1] and Chu obtained a majority interest and three seats on the Board of Directors of Animated Images. Plaintiffs are former stockholders of Animated Images who lost the value of their interest in Animated Images as a result of the consummation of the Purchase and Merger Agreements. Plaintiffs allege that they were deceived into selling their interest in Animated Images. Plaintiffs claim that Defendants violated the "Chinese wall" provision[2] in the Purchase Agreement and then forced minority shareholders to approve a November 10, 2000, merger with Freeborders, Inc. ("Freeborders"), a Delaware corporation with its principal place of business in California.[3] Specifically, Plaintiffs assert claims against all Defendants for securities fraud (Counts I and III), violation of securities registration laws (Counts II and IV), fraud (Count V), negligent misrepresentation (Count VI), breach of fiduciary duty (Count IX), and civil conspiracy (Count X). Count VII (breach of contract—pre-merger) is asserted only against Defendant ICG. Count VIII (breach of contract—post-merger) was asserted only against Defendant Freeborders and falls within the ambit of the Court's oral Order Granting Plaintiffs' Motion to Dismiss Defendant Freeborders.

In April 2003, all Defendants moved to stay the proceedings in this case and moved this Court to send the claims brought against Freeborders to arbitration under the arbitration provision contained in the Merger Agreement. *See* Defendant Freeborders, Inc.'s Motion to Stay Proceedings Pending Arbitration and Incorporated Memorandum of Law (Docket Item No. 13) at 3, 5; Defendant David Chu's Motion to Dismiss the Complaint Pursuant to Fed.R.Civ.P. 12(b)(6), 9(b) and the PLSRA and Incorporated Memorandum of Law (Docket Item No. 18) at 19–20; and

**1.** Defendant Robert Burch contends that he is not bound to the arbitration clause in the Purchase Agreement in his individual capacity because he signed the Purchase Agreement as the General Partner of the Burch Family Partnership. In determining who is bound by an arbitration agreement, federal courts look to state-law contract principles. *See Hartford Fin. Sys., Inc. v. Florida Software Servs., Inc.,* 550 F.Supp. 1079, 1086–87 (D.Me.1982). Under the laws of Maine, which apply to the Purchase Agreement, *see* Purchase Agreement § 6.10, Burch is a proper party to the arbitration provision in his individual capacity. Section 295–A of the Maine Partnership Act provides that all partners are jointly liable for all debts and obligations of the partnership. 31 M.R.S. § 295–A(1)(B) (2003). This general principle of partnership law extends to general partners in a limited partnership. 31 M.R.S. § 443(2) (2003). For a discussion of general partner liability, see *MP Assoc. v. Liberty,* 771 A.2d 1040, 1044–45 (Me.2001).

**2.** Section 4.03 of the Purchase Agreement provides in part:

> Each Investor shall promptly disclose to the Board of Directors any investments in or other affiliations with competitors. An Investor's affiliates and associates shall not be required to resign from the Board due to any investment in a competing company if (i) the Investor maintains suitable "Chinese wall" protections against such persons' involvement in activities relating to such competing company and (ii) the Investor would not violate any fiduciary duty to the Company, in the written opinion of counsel to the Company, or such competing company by continued service on the Board.

Plaintiffs allege that Defendants' simultaneous and undisclosed business activities with Freeborders constituted a breach of this "Chinese wall" provision and eventually led to the forced merger. *See* Complaint ¶¶ 62, 96.

**3.** As noted *infra,* claims against Defendant Freeborders, Inc. have been dismissed with prejudice. *See* Court's oral Order Granting Plaintiffs' Motion to Dismiss Defendant Freeborders (Docket Item Nos. 74, 78 (transcript)).

Consolidated Motion to Dismiss or in the Alternative Motion to Stay of Defendants Internet Capital Group, Inc., Ronald Hovsepian, Mark Lotke and Robert Burch with Incorporated Memorandum of Law (Docket Item No. 19) at 23 n. 22. On July 18, 2003, this Court entered an order staying this proceeding pursuant to the arbitration provision contained in the Merger Agreement.[4] *See* Order Granting Defendants' Motion to Stay Action Pending Arbitration of Claims (Docket Item No. 34). Plaintiffs failed to pursue arbitration with Defendant Freeborders and on March 29, 2004, Plaintiffs moved this Court to dismiss Defendant Freeborders.[5] The Court granted Plaintiffs' Motion to Dismiss Defendant Freeborders. *See* Docket Item Nos. 74, 78 (transcript).

On July 6, 2004, *Plaintiffs* filed a renewed Motion to Compel Arbitration and for Continued Stay (Docket Item No. 75). Plaintiffs base their argument in this Motion on the arbitration provision contained in section 5.01 of the *Purchase Agreement.*[6] Defendants make three primary arguments in opposition to an arbitral forum.[7] First, Defendants argue that there is no enforceable arbitration agreement between Plaintiffs and ICG, Burch, and Chu. Second, Defendants argue that Plaintiffs waived any contractual rights to arbitrate by commencing litigation in this Court. Third, Defendants assert that any claims subject to arbitration have not yet ripened.[8]

For the reasons stated below, the Court grants Plaintiffs' Motion to Compel Arbitration in this case and orders the parties to arbitration pursuant to the Purchase Agreement.

## II. Discussion

### A. Applicable Law

■ The FAA provides a statutory framework governing arbitrability in both state and federal courts. *See Doctor's Assoc., Inc. v. Casarotto*, 517 U.S. 681, 684, 116 S.Ct. 1652, 134 L.Ed.2d 902 (1996). The FAA provides for stays of proceedings in federal district courts when an issue in the proceeding is referable to arbitration, and for orders compelling arbitration when

---

4. Following a motion for clarification, this Court stayed proceedings pending arbitration of all of Plaintiffs' claims against Defendant Freeborders only. *See* Court's Order of September 3, 2003, endorsed on Motion of Defendants Internet Capital Group, Inc., Ronald Hovsepian, Mark Lotke, and Robert Burch for Confirmation of the Court's Order Dated July 18, 2003 (Docket Item No. 35).

5. In the same motion, Plaintiffs moved to compel arbitration against Defendants ICG, Burch, and Chu.

6. Plaintiffs do not seek to compel arbitration against Defendants Hovsepian and Lotke.

7. Defendant David Chu also asserts that Plaintiffs are judicially estopped from seeking or compelling arbitration. This argument must fail, however, because the court never accepted Plaintiffs' positions. In determining whether the party "succeeded" in a prior proceeding, a Court examines whether the prior forum "accepted the legal or factual assertion alleged to be at odds with the position advanced in the current forum ...." *Gens v. Resolution Trust Corp. (In re Gens),* 112 F.3d 569, 572–73 (1st Cir.1997). In this case, the Court accepted *Defendants'* assertions that the scope of the arbitration provisions contained in the Merger Agreement and the Purchase Agreement applied to the Plaintiffs. Although both parties have taken opposite positions in the context of the arbitration provisions in the Merger Agreement and the Purchase Agreement, the Court only accepted Defendants' prior position. As such, Plaintiffs' current position is not barred by judicial estoppel. For additional discussion of judicial estoppel, see footnote 11, *infra.*

8. The Court does not address this argument because determination of the proper arbitral procedures under Article V of the Purchase Agreement is for the consideration of the arbitrators.

one party has failed or refused to comply with an arbitration agreement. *See EEOC v. Waffle House, Inc.*, 534 U.S. 279, 289, 122 S.Ct. 754, 151 L.Ed.2d 755 (2002); 9 U.S.C. §§ 3, 4. These provisions suggest a "liberal federal policy favoring arbitration agreements." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983).[9] "Unless it can be said 'with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute,' the dispute should be submitted to arbitration." *Concourse Village, Inc. v. Local 32E, Service Employees Int'l Union*, 822 F.2d 302, 304 (2d Cir.1987) (quoting *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582–83, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960)).

## B. Standing

▉ In considering whether Plaintiffs have standing to compel arbitration under the Purchase Agreement,[10] the Court considers the plain language of the arbitration provision and whether a non-signatory may invoke an arbitration provision against a signatory to the contract. In this case, the plain language of the Purchase Agreement unambiguously required all disputes to be submitted to arbitration. The dispute resolution sections of the Purchase Agreement require the parties to "attempt in good faith to resolve by negotiation any controversy or claim arising out of or relating to the Company [Animated Images -] or this agreement." Purchase Agreement § 5.01. If negotiation fails under section 5.01, the Purchase Agreement mandates arbitration under sections 5.02 and 5.03. *See id.* at §§ 5.02, 5.03.

Defendants contend that because Plaintiffs, as individual shareholders, did not personally sign the Purchase Agreement, they may not avail themselves of the arbitration clause in the agreement.[11] Al-

---

**9.** Section 3 of the FAA provides:

If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration ... shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement ....

9 U.S.C. § 3 (2000).

**10.** The standing issue here is not Article III standing, but rather is a matter of contract interpretation. *See, e.g., Perry v. Thomas*, 482 U.S. 483, 493, 107 S.Ct. 2520, 96 L.Ed.2d 426 (1987).

**11.** Whether minority shareholders in a closely held corporation may individually invoke the provisions of a contract signed by the Chairman and CEO of the close corporation is a legal matter that has not been addressed in this Circuit, nor has it been effectively briefed by the parties to this case. However, in earlier filings, Defendants ICG, Burch, and Chu took the position that Plaintiffs are subject to the arbitration provision contained in the Purchase Agreement. *See* Consolidated Motion to Dismiss or in the Alternative Motion to Stay of Defendants' Internet Capital Group, Inc., Ronald Hovsepian, Mark Lotke, and Robert Burch with Incorporated Memorandum of Law (Docket Item No. 19) at 20 n. 20 ("...pursuant to the Federal Arbitration Act, 9 U.S.C. § 3, the Court should stay the claim and compel plaintiffs to arbitrate [this claim] and any other remaining claims against ICG and Burch pursuant to the broad arbitration provision included in the Purchase Agreement"); Defendant David Chu's Motion to Dismiss the Complaint Pursuant to Fed. R.Civ.P. 12(b)(6), 9(b) and the PLSRA and Incorporated Memorandum of Law (Docket Item No. 18) at 20 ("...certain of the claims herein assert breaches of the AI/ICG Purchase Agreement .... [T]hat agreement contains an arbitration provision at page 14, Article V. Certain of the codefendants have communicated an intention to move for a stay of this action pending arbitration of all arbitral dis-

though the Court concludes that the demand for arbitration under the Purchase Agreement is warranted on a theory of estoppel as articulated in the preceding note, the Court also finds that the demand, considered on the merits of the language and scope of the arbitration provision in the Purchase Agreement and the circumstances of the case, is fully supportable on the pertinent authorities.

Although it is generally true that "a contract cannot bind a nonparty," there exist exceptions whereby non-signatories may compel arbitration. *Restoration Pres. Masonry, Inc. v. Grove Eur. Ltd.*, 325 F.3d 54, 63 (1st Cir.2003) (*quoting*

---

putes. We join in such motion and hereby so move on behalf of Mr. Chu.").

In addition, the Court accepted Defendants' position that Plaintiffs, as minority shareholders of a close corporation who took corporate action to approve the merger, were thus parties to the Merger Agreement and bound to its arbitration provision. *See* Court's Order Granting Defendants' Motions to Stay Action Pending Arbitration of Claims (Docket Item No. 34) at 5. Although the terms of the Merger Agreement only applied to Defendant Freeborders, the legal position advanced by all Defendants asserted that Plaintiffs were bound to arbitrate under both the Merger Agreement and the Purchase Agreement. Accepting Defendants' position that minority shareholders were bound by the arbitration provision, entered into on their behalf by the corporation, the Court ordered that all claims arising out of the Merger Agreement be arbitrated according to the terms of the arbitration provision. For reasons unknown to the Court, Defendants ICG, Burch, and Chu have reversed their position and now take the position that Plaintiffs are not parties to the Purchase Agreement and thus lack the ability to enforce its arbitration provision.

Judicial estoppel is a rule "intended to prevent improper use of judicial machinery ... [and] is an equitable doctrine invoked by a court at its discretion." *New Hampshire v. Maine*, 532 U.S. 742, 750, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001) (internal citations omitted). Judicial estoppel takes effect when the party to be estopped "succeeded previously with a position directly inconsistent with the one [it] currently espouses." *Lydon v. Boston Sand & Gravel Co.*, 175 F.3d 6, 13 (1st Cir. 1999). Thus, judicial estoppel "generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." *New Hampshire*, 532 U.S. at 749, 121 S.Ct. 1808 (quoting *Pegram v. Herdrich*, 530 U.S. 211, 227 n. 8, 120 S.Ct. 2143, 147 L.Ed.2d 164 (2000)).

Although there is no general formula for when judicial estoppel is applicable, the Supreme Court identified three factors in determining whether to apply the doctrine in a specific case.

> First, a party's later position must be clearly inconsistent with its earlier position. Second, courts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled. Absent success in a prior proceeding, a party's later inconsistent position introduces no risk of inconsistent court determinations, and thus poses little threat to judicial integrity. A third consideration is whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.

*Id.* at 750–51, 121 S.Ct. 1808 (internal quotations omitted). These three factors, however, are not the sole considerations; rather, courts must evaluate each case on its individual merits. *See id.* at 751, 121 S.Ct. 1808 ("In enumerating these factors, we do not establish inflexible prerequisites or an exhaustive formula for determining the applicability of judicial estoppel. Additional considerations may inform the doctrine's application in specific factual contexts.").

The Court finds any factual distinction between the language and scope of the arbitration clause of the Purchase Agreement and that of the Merger Agreement to be of insignificant effect. For purposes of judicial estoppel, it is the legal position advocated by the parties that controls. In this case, the legal question at issue is whether minority shareholders are bound by an arbitration provision in a contract signed only by the corporate representative. The Court has already answered this question in the affirmative in the context of the Merger Agreement.

*Waffle House*, 534 U.S. at 294, 122 S.Ct. 754). The FAA, although requiring a writing, does not require the parties' signatures. *See Genesco, Inc. v. T. Kakiuchi & Co.*, 815 F.2d 840, 856 (2d Cir.1987). "Nonsignatories sometimes can be obligated by, or benefit from, agreements signed by others, and these principles can apply to arbitration provisions." *McCarthy v. Azure*, 22 F.3d 351, 356 (1st Cir.1994). In this case, the arbitration provision contained in the Purchase Agreement is broad enough to bind non-signatories.[12] The arbitration clause does not contain restrictive language, but rather contains the standard term "arising out of," associated with broad arbitration provisions. Indeed, other courts have found arbitration clauses substantially similar to the arbitration clause contained in the Purchase Agreement to be sufficiently broad to bind non-signatories. *See Progressive Casualty Ins. Co. v. C.A. Reaseguradora Nacional De Venezuela*, 991 F.2d 42, 45 (2d Cir. 1993) (finding a non-signatory reinsurer bound by broad arbitration provision stating "Any question or dispute arising between the contracting parties concerning the interpretation of this ... Agreement"); *Fluehmann v. Assocs. Fin. Servs.*, 2002 WL 500564, *7, 2002 U.S. Dist. LEXIS 5755, at *17 (D.Mass. Mar. 29, 2002) (binding a non-signatory where the subject arbitration provision is ostensibly broad, covering any dispute that may "arise under" or "relate to" the Loan Agreement). When confronted with such broad language, courts presume the validity of an agreement to arbitrate. *See Kiefer Specialty*

*Flooring, Inc. v. Tarkett, Inc.*, 174 F.3d 907, 910 (7th Cir.1999). We proceed, therefore, with a recognition of the broad scope of arbitration agreements.

Considering the breadth of the arbitration provision in the Purchase Agreement, the Court must next consider whether Plaintiffs' claims arise under this agreement. We begin our analysis by acknowledging that federal courts generally "have been willing to estop a signatory from avoiding arbitration with a nonsignatory when the issues the nonsignatory is seeking to resolve in arbitration are intertwined with the agreement that the estopped party has signed." *InterGen N.V. v. Grina*, 344 F.3d 134, 145 (1st Cir.2003) (citing *Thomson–CSF, S.A. v. Am. Arbitration Ass'n*, 64 F.3d 773, 779 (2d Cir. 1995)). The principal question for the court is whether the claims "arise under" the text of the agreement, not whether the issue is explicitly covered by the agreement. *See Fluehmann*, 2002 WL 500564, *7, 2002 U.S. Dist. LEXIS 5755, at *19 (citing *Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 7 F.3d 1110, 1113 (3d Cir.1993)). In the same respect as Plaintiffs' claims against Freeborders arose out of the Merger Agreement, Plaintiffs' claims against ICG, Burch, and Chu arise out of the Purchase Agreement. The Court finds that the Plaintiffs have made a good-faith claim that the Purchase Agreement was the initial step giving rise to the subsequent acts which allegedly harmed Plaintiffs.[13] The Court finds that Plain-

---

12. The Court notes that whereas the Merger Agreement has a shareholder signature line, the Purchase Agreement does not. Such an execution under the Merger Agreement was contractually necessary in order to commit the shareholders to the *Merger*. However, independent execution of the Purchase Agreement by representatives of the shareholders was not required because that document was

executed by corporate officers as a result of authority granted to them by the shareholders. *See* Purchase Agreement § 2.02.

13. Defendant Chu contends that because Plaintiffs have only asserted claims against him for breach of fiduciary duty, fraud, and negligent misrepresentation, and no contractual claims, he should not be compelled to

tiffs' claims arose under the Purchase Agreement. Moreover, the Court finds that all of Plaintiffs' claims relate to "the Company"—Animated Images. Mindful of the guidance from the Supreme Court that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability," *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24–25, 103 S.Ct. 927, and the position taken in earlier proceedings by Defendants, the Court finds that Plaintiffs may invoke the arbitration provision contained in the Purchase Agreement.

### C. Waiver

■ Defendants argue that Plaintiffs, by initiating proceedings in this Court, have waived their right to compel arbitration. In determining whether a party to an arbitration agreement has waived its arbitration right, federal courts typically have looked to:

> ■ whether the party has actually participated in the lawsuit or has taken other action inconsistent with his right, ... [2] whether the litigation machinery has been substantially invoked and the parties were well into preparation of a lawsuit by the time an intention to arbitrate was communicated by the defendant to the plaintiff, ... [3] whether there has been a long delay in seeking a stay or whether the enforcement of arbitration was brought up when trial was

near at hand .... Other relevant factors are [4] whether the defendants have invoked the jurisdiction of the court by filing a counterclaim without asking for a stay of the proceedings, ... [5] whether important intervening steps (e.g., taking advantage of judicial discovery procedures not available in arbitration ...) had taken place, ... and [6] whether the other party was affected, misled, or prejudiced by the delay.

*Creative Solutions Group, Inc. v. Pentzer Corp.*, 252 F.3d 28, 32–33 (1st Cir.2001) (quoting *Jones Motor Co., Inc. v. Chauffeurs, Teamsters & Helpers Local Union No. 633*, 671 F.2d 38, 44 (1st Cir.1982)). "Waiver is not to be lightly inferred, and mere delay in seeking arbitration without some resultant prejudice to a party cannot carry the day." *Id.* at 32 (internal quotation omitted).

■ Plaintiffs in this case have certainly participated in the present lawsuit. It was Plaintiffs who initiated these proceedings. Although Plaintiffs elected to file suit in federal court, the Court finds that the "litigation machinery" has not been "substantially invoked" to a degree requiring a finding of waiver. "The mere filing of a complaint does not constitute a waiver [because the] essential test is whether the pursuit of a remedy other than arbitration has worked substantial prejudice to the other party." *Tokio Marine & Fire Ins. Co., Ltd. v. M/V Saffron Trader*, 257 F.Supp.2d 651, 654 (S.D.N.Y.2003) (quoting *Chatham Shipping Co. v. Fertex S.S.*

---

arbitrate. *See* Defendant David Chu's Memorandum of Law in Opposition to Plaintiffs' Motion to Compel Arbitration and For Continued Stay (Docket Item No. 90) at 8–9. This argument fails, however, for the same reasons stated above. Plaintiffs' allege a calculated plan on the part of the Defendants to purchase a controlling interest in Animated Images, eliminate sources of capital for Animated Images, force the merger with Free-

borders, and work to the detriment of Animated Images' minority shareholders. Plaintiffs' Complaint suggests that the Purchase Agreement was the initial event in this sequence. Under the broad arbitration provision contained in the Purchase Agreement, this Court finds that the claims against Defendant Chu do in fact arise under the Purchase Agreement.

*Corp.*, 352 F.2d 291, 293 (2d Cir.1965)). The Court thus finds that Plaintiffs' filing of this action did not constitute a *per se* waiver of their right to arbitrate. In this case, the vast majority of the Court's and the parties' time between service of the Complaint and the present has been focused on whether these claims are properly subject to arbitration under the pertinent agreement.

Defendants also suggest that the Plaintiffs waived their ability to enforce the arbitration provision as a consequence of the length of time that has elapsed between the filing of the Complaint and their invoking the arbitration provision. There are no bright line rules defining the length of delay necessary to constitute waiver of an arbitration clause. *See Restoration Pres. Masonry*, 325 F.3d at 61. Plaintiffs first notified Defendants of their intention to compel arbitration under the Purchase Agreement on August 4, 2003, less than seven months after the filing of the Complaint. *See* Plaintiffs' Motion to Clarify and to Compel Arbitration (Docket Item No. 36). Defendants' argument that the "litigation machinery" has been underway for twenty-two months is not of significant weight because in the months subsequent to August 2003, the proceedings before this Court in large part focused on the status of former Defendant Freeborders.

The length of delay must be evaluated in the context of litigation activities engaged in during that time. *Cf. Creative Solutions Group*, 252 F.3d at 33 (waiver not found when there was no discovery or other activity aside from plaintiff's filing a request for production); *Sevinor v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 807 F.2d 16, 19 (1st Cir.1986) (no prejudice despite plaintiffs replying to over 300 interrogatories and twelve comprehensive requests for production of documents); *J & S Constr. Co., Inc. v. Travelers Indem.*

*Co.*, 520 F.2d 809, 809–10 (1st Cir.1975) (thirteen month delay not enough to constitute waiver); *but cf. Rankin v. Allstate Ins. Co.*, 336 F.3d 8, 13 (1st Cir.2003) (finding waiver due to delay in demanding arbitration until after discovery complete and trial date approaching); *Restoration Pres. Masonry*, 325 F.3d at 61 (waiver found where party opposing arbitration was involved in at least five depositions and thirteen pre-trial conferences); *Navieros Inter–Americanos, S.A. v. M/V Vasilia Express*, 120 F.3d 304, 316 (1st Cir.1997) (finding waiver where delay lasted from filing of complaint until the eve of trial); *Jones Motor*, 671 F.2d at 42 (waiver found when party seeking arbitration engaged in deposition-taking, a pre-trial conference, cross-motions for summary judgment, and oral argument). The Court finds that the seven month period between the filing of the Complaint and Plaintiffs' first demand for arbitration did not result in an implied waiver of the arbitration provisions. Moreover, the litigation machinery has not been at all set in motion on the merits of the claims with respect to Defendants ICG, Burch, and Chu.

Finally, in order to establish waiver, the party opposing the motion to compel arbitration must demonstrate prejudice. *See Navieros Inter–Americanos*, 120 F.3d at 316. In this case, Defendants have yet to file an answer to the Complaint. No scheduling order has been issued. To the Court's knowledge, no witnesses have been deposed. Any prejudice the Defendants may have suffered due to Plaintiffs' change in strategy is at least equaled, if not offset, by the fact that Defendants themselves first insisted upon arbitration. Accordingly, the Court finds that Defendants have not suffered prejudice as a result of any delay in the proceedings.

## III. CONCLUSION

It is **ORDERED** that Plaintiffs' Motion to Compel Arbitration on Counts I through

VII and Counts IX and X against Defendants Internet Capital Group, Inc., Robert Burch, and David Chu be, and it is hereby, **GRANTED**, and it is further **ORDERED** that the parties submit said claims for resolution by arbitration in accordance with the provisions of Article V of the Purchase Agreement.

It is further **ORDERED** that this action is **STAYED** pending arbitration.