**KIEFER SPECIALTY FLOORING, INC., Plaintiff–Appellant,**

v.

**TARKETT, INC., Defendant–Appellee.**

No. 98–1945.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 8, 1999.

Decided April 21, 1999.

David M. Levin (argued), Chicago, IL, for Plaintiff–Appellant.

David F. Heroy, Douglas M. Chalmers (argued), Bell, Boyd & Lloyd, Chicago, IL, Kenneth H. Zucker, Pepper, Hamilton & Scheetz, Berwyn, PA, for Defendant–Appellee.

Before KANNE, DIANE P. WOOD, and EVANS, Circuit Judges.

KANNE, Circuit Judge.

Kiefer Specialty Flooring, Inc., and Tarkett, Inc., were parties to two separate distributorship agreements in which Kiefer was appointed as a non-exclusive distributor of Tarkett's commercial vinyl flooring products, first within the Northern Illinois market and then within the Kansas City market. These agreements contained identical arbitration provisions requiring all claims and controversies arising from or relating to the distributorship agreements to be settled by arbitration.

Upon Kiefer's request to terminate the distributorship agreements, Tarkett commenced an arbitration proceeding against Kiefer to collect a debt of approximately $194,000 that Kiefer allegedly owed Tarkett. Kiefer responded by filing suit in district court against Tarkett, alleging that Tarkett intentionally interfered with the contract of a Kiefer employee, Richard Rollins, by soliciting Rollins for employment with Tarkett and that this solicitation constituted a breach of Tarkett's duty not to interfere with the distributorship agreements. The issue presented before us is whether Kiefer's claim that Tarkett tortiously interfered with Rollins's employment contract falls within the arbitration provision included in the distributorship agreements.

According to Kiefer's amended complaint, Rollins was employed by Tarkett at the time Tarkett and Kiefer entered into the first distributorship agreement covering the Northern Illinois market in 1990. Rollins served as a commercial specialist for a six state region, which included Missouri and Kansas. As a commercial specialist, Rollins had extensive knowledge of the market in these states because he was largely responsible for promoting Tarkett's vinyl flooring products within this region.

During the performance of the first distributorship agreement, Kiefer approached Tarkett about the possibility of entering into another distributorship agreement covering the Indianapolis market. Although this market was unavailable, Tarkett offered to enter into a distributorship agreement with Kiefer for the Kansas City market on the condition that Kiefer employ Rollins to manage the office serving this market. Kiefer agreed to hire Rollins and the parties, according to Kiefer, entered into a distributorship agreement for the Kansas City market as a result of the extension of employment to Rollins. Approximately two years later, Rollins accepted a position with Tarkett to become sales manager for the Kansas City market. After Rollins's departure, Kiefer terminated the distributorship agreements with Tarkett.

In response to the litigation initiated by Kiefer, Tarkett filed a motion to compel arbitration pursuant to the arbitration provision in the parties' distributorship agreements and to stay the suit pending arbitration. Kiefer opposed this motion and asserted that its claims were beyond the scope of the arbitration provision. The district court granted Tarkett's motion and dismissed Kiefer's suit without prejudice. Tarkett and Kiefer participated in an arbitration proceeding before the American Arbitration Association, and the arbitrator entered an award in favor of Tarkett on its claims and against Kiefer on its counterclaims.

Upon receiving a favorable outcome in the arbitration proceedings, Tarkett filed a motion in district court to confirm the arbitration award and for judgment. The district court granted this motion and entered judgment in favor of Tarkett. Kiefer now appeals, asserting that its claim of tortious interference was beyond the scope of the arbitration provision in the distributorship agreements and, therefore, the district court erred by compelling arbitration and dismissing Kiefer's claim. Because we agree that Kiefer's claim was within the scope of the arbitration provision agreed upon by the parties, we affirm.

#### ANALYSIS

■■ The Federal Arbitration Act ("FAA") provides that an arbitration clause in a "contract evidencing a transaction involving commerce ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Whether a particular issue is subject to arbitration is a matter of contract interpretation, because "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960). Notwithstanding this qualification, strong support for the federal policy favoring arbitration exists. The Supreme Court has explained that the FAA "establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983); *see also Miller v. Flume*, 139 F.3d 1130, 1136 (7th Cir. 1998) ("[O]nce it is clear that the parties have a contract that provides for arbitration of some issues between them, any doubts concerning the scope of the arbitration clause are resolved in favor of arbitration."). To this end, a court may not deny a party's request to arbitrate an issue "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Warrior & Gulf Navigation Co.*, 363 U.S. at 582–83. With these considerations in mind, we review *de novo* a district court's decision with respect to a motion to compel arbitration. *See Matthews v. Rollins Hudig Hall Co.*, 72 F.3d 50, 53 (7th Cir.1995); *Kresock v. Bankers Trust Co.*, 21 F.3d 176, 177–78 (7th Cir.1994).

The sole issue before us centers on whether the factual allegations underlying Kiefer's claim of tortious interference fall within the arbitration provision that the parties included in their distributorship agreements. The arbitration provision in this case contemplates that all controversies and claims "arising out of or relating to" the agreements between the parties would be settled by arbitration. Specifically, the arbitration provision stated that "[a]ny controversy or claims arising out of or relating to [the Distributorship] Agreement or the Letter Agreement shall be settled by arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association." Similar types of arbitration provisions have been characterized as extremely broad and capable of an expansive reach. *See Elzinga & Volkers, Inc. v. LSSC Corp.*, 47 F.3d 879, 881 (7th Cir.1995) (describing an arbi-

tration clause committing the parties to arbitrate "[a]ny controversy or claims arising out of or related to the Contract" as broad); *Tracer Research Corp. v. National Envtl. Servs. Co.*, 42 F.3d 1292, 1295 (9th Cir.1994) (noting that language such as "relating to" indicates an arbitration clause considerably broader in reach than one limited to disputes "arising out of" certain dealings). Broad arbitration clauses, such as the one in the case before us, necessarily create a presumption of arbitrability.

■] In the present case, Kiefer and Tarkett entered into distributorship agreements in which Tarkett appointed Kiefer as a non-exclusive distributor of its products within the Northern Illinois and Kansas City markets. It is by no means a stretch to conclude that Kiefer's claim that Tarkett tortiously interfered with the employment contract between Kiefer and Rollins "arises from or relates to" the distributorship agreements between Tarkett and Kiefer. This conclusion is aptly illustrated by an examination of the amended complaint filed by Kiefer. In one sentence, Kiefer alleges that Tarkett's solicitation of Rollins constituted an interference with the employment contract between Kiefer and Rollins. In the next, Kiefer asserts that this same solicitation constituted a breach of Tarkett's duty not to interfere with Kiefer's performance under the distributorship agreements. Certainly there can be no question that the latter claim is arbitrable under the arbitration provision at issue. Given the circumstances surrounding the formation of the second distributorship agreement, it would certainly seem illogical under the facts of this case for us to conclude that the sole underlying act at issue—Tarkett's solicitation of Rollins—could result in some claims that were arbitrable and some that were not. This conclusion would result in the issue of the arbitrability of a particular claim turning on the label—"tort" or "contract"—a party chose to affix to the claim. *See J.J. Ryan & Sons v. Rhone Poulenc Textile, S.A.*, 863 F.2d 315, 321 (4th Cir.

1988) (stating that a broad arbitration clause "does not limit arbitration to the literal interpretation or performance of the contract. It embraces every dispute between parties having a significant relationship to the contract regardless of the label attached to the dispute."). And although Kiefer appeals the district court's decision to compel arbitration only with respect to the claim it chose to cast in tort and not the breach of contract claim, we need not view these claims in isolation when the claims arise from the very same act. "We have routinely held that a party may not avoid a contractual arbitration clause merely by 'casting its complaint in tort.'" *Sweet Dreams Unlimited, Inc. v. Dial–A–Mattress Int'l, Ltd.*, 1 F.3d 639, 643 (7th Cir.1993) (citations omitted).

More compelling, however, is the fact that Kiefer's narrow view of the arbitration provision at issue runs afoul of both the intent of the FAA and the manner in which courts should interpret and enforce arbitration agreements. The tortious interference claim in Kiefer's amended complaint arises from the very heart of the relationship between Kiefer and Tarkett with respect to the Kansas City market. Indeed, the facts set forth in Kiefer's complaint demonstrate that the decision to enter into the distributorship agreement for the Kansas City market appeared to be contingent upon the extension of an offer of employment from Kiefer to Rollins. The fact that the underlying contract between the parties is bound up with the employment agreement with which Tarkett has allegedly interfered distinguishes the present case from other cases in which courts have concluded that claims of tortious interference were not arbitrable. *See, e.g., Collins & Aikman Products Co. v. Building Sys., Inc.*, 58 F.3d 16, 22 (2d Cir.1995); *Genesco, Inc. v. T. Kakiuchi & Co.*, 815 F.2d 840, 856 (2d Cir.1987).

### CONCLUSION

Because a significant relationship exists between Kiefer's claim of tortious interfer-

ence and the arbitration provision contained in the parties' distributorship agreements, we conclude that Kiefer's claim of tortious interference was within the scope of the arbitration provision at issue in this case. Therefore, the judgment of the district court is AFFIRMED.