In the

# United States Court of Appeals
## For the Seventh Circuit

No. 01-4272

MICHAEL H. ROSENBLUM,

*Plaintiff-Appellant,*

v.

TRAVELBYUS.COM LIMITED, a foreign corporation,
TRAVELBYUS INCORPORATED, a foreign corporation,
and BILL KERBY, a foreign citizen,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 01 C 6441—**Suzanne B. Conlon,** *Judge.*

ARGUED MAY 29, 2002—DECIDED AUGUST 6, 2002

Before RIPPLE, DIANE P. WOOD and EVANS, *Circuit Judges.*

RIPPLE, *Circuit Judge.* Michael H. Rosenblum sold his travel publication business to Travelbyus.com in July 2000. Under the terms of an employment agreement executed at the time of the sale, Mr. Rosenblum continued to work at his former company. The agreement governing the sale required that a payment be made in December 2000. When that payment was not made, Mr. Rosenblum brought this action against Travelbyus.com, Ltd., Travelbyus.com, Inc.

and Bill Kerby (collectively "Travelbyus")[1] for breach of contract and fraud. The district court determined that this dispute was governed by an arbitration clause in the employment agreement and granted Travelbyus' Rule 12(b)(6) motion to dismiss. Mr. Rosenblum now appeals from that dismissal. He submits that the arbitration clause in the employment agreement does not govern this dispute because the disagreement arose solely under the acquisition agreement governing the purchase and sale of Mr. Rosenblum's business. For the reasons set forth in the following opinion, we reverse the judgment of the district court and remand this case for proceedings consistent with this opinion.

# I

# BACKGROUND

## A. Facts

Michael H. Rosenblum was the principal owner of Muffin Communications, Ltd. Muffin was a travel-related media business that, among other things, produced a travel magazine. In the spring and summer of 2000, Mr. Rosen-

---

[1] The parties to the Acquisition Agreement are Mr. Rosenblum and Travelbyus.com, Ltd., a Canadian corporation. Mr. Kerby was the chief executive officer of Travelbyus.com, Ltd., at the time Mr. Rosenblum filed his complaint. Travelbyus.com, Inc., is a Delaware corporation. The relationship between these parties is not revealed by the record and is not material to the issues in this appeal. In the district court, the defendants argued that Mr. Kerby and the American Travelbyus.com were not appropriate defendants in this action. Without expressing any opinion on this issue, we shall refer to the defendants collectively as Travelbyus.

blum negotiated the sale of Muffin to Travelbyus, a Canadian corporation that operates a travel-related website. Mr. Rosenblum agreed to sell Muffin to Travelbyus for a total price of $7 million; this agreement was memorialized in a contract that was executed on July 20, 2000 ("Acquisition Agreement").

The Acquisition Agreement provided that Mr. Rosenblum was to receive a total of $7 million in cash and Travelbyus stock in exchange for Muffin. Mr. Rosenblum received $300,000 in cash at the closing and was due to receive the balance on December 15, 2000. According to the Agreement, Mr. Rosenblum was to receive one million shares of Travelbyus stock on December 15. At the time the agreement was executed, the stock was trading around $6.70 per share. The Agreement provided that, if the stock fell below $6.70 per share, Mr. Rosenblum would receive a combination of cash and stock equal to $6.7 million on December 15. The contract left the precise combination of cash and stock to Travelbyus' discretion.

As a condition precedent to the Acquisition Agreement, the parties also executed the Employment Agreement on July 20, 2000. Under the terms of that agreement, Mr. Rosenblum agreed to work for Travelbyus in the position of Senior Vice-President of Muffin, which continued its corporate existence after the sale to Travelbyus. In that capacity Mr. Rosenblum would develop travel-related content for Travelbyus and receive a salary of $125,000 per year. The Employment Agreement included a broad arbitration clause. The arbitration clause, in pertinent part, states: "Except for any matters for which this Agreement expressly provides otherwise, any matter in dispute under or relating to this Agreement shall . . . be finally resolved by binding arbitration." R.12, Ex.B § 15.

Both the Acquisition Agreement and the Employment Agreement contain merger clauses. Article 1.4 of the Ac-

quisition Agreement states: "This Agreement together with the other agreements and documents to be delivered pursuant to this Agreement constitute the entire agreement between the Parties pertaining to the subject matter hereof and supersede all prior agreements . . . whether oral or written. . . ." R.3, Ex.A art. 1.4. The Employment Agreement provides:

> This Agreement constitutes and expresses the whole agreement of the parties hereto with respect to the employment of the Executive by the Company and with respect to any matters or things herein provided for or hereinbefore discussed or mentioned with reference to such employment. All promises, representations, collateral agreements and understandings relative thereto not incorporated herein are hereby superseded and cancelled by this Agreement.

R.12, Ex.B § 19. Both contracts also include noncompete agreements, which prevent Mr. Rosenblum from competing with Travelbyus for two years after his employment ceases.

In the months following the execution of the contracts, Travelbyus' stock decreased significantly in value. On December 15, 2000, when Travelbyus was required to make the final payment to Mr. Rosenblum, its stock was trading at far less than the $6.70 per share price at which it was valued in the summer of 2000. Travelbyus failed to make any payment, and Mr. Rosenblum brought this action alleging breach of contract and fraud.

## B. District Court Proceedings

Mr. Rosenblum's complaint alleged that Travelbyus breached the Acquisition Agreement and engaged in a

pattern of fraudulent conduct designed to acquire Muffin's business relationship with Mobile Media Entertainment. The Acquisition Agreement was attached to the complaint. Travelbyus responded with a Rule 12(b)(6) motion to dismiss the complaint for failure to state a claim upon which relief can be granted. Travelbyus attached the Employment Agreement to its motion and submitted that the Employment Agreement's arbitration clause barred Mr. Rosenblum's action. Travelbyus sought dismissal of the case or, in the alternative, a stay of proceedings pending the outcome of arbitration.

The district court granted Travelbyus' motion and dismissed the action. The court held that "the employment agreement is incorporated by reference into the acquisition agreement, the two agreements are clearly interrelated and are explicitly part of the 'entire agreement.'" R.17, Dist. Ct. Op. at 1. The court further concluded that "[t]he arbitration provision here is a broad one: it covers all matters relating to the employment agreement." *Id.* Thus the court found that the dispute at issue here was covered by the arbitration provision and dismissed Mr. Rosenblum's complaint.

# II
## DISCUSSION

### A. Threshold Matters

Mr. Rosenblum advances two interrelated procedural arguments that must be addressed before we consider the principal issue in this appeal. He contends that the district court erred in considering the Employment Agreement at all. He submits that, because the Employment Agreement was not referenced in his complaint, the court should not

have considered it on a Rule 12(b)(6) motion. Mr. Rosenblum further contends that, once the district court decided to include the Employment Agreement in its deliberations, it should have converted Travelbyus' Rule 12(b)(6) motion to a motion for summary judgment. Had it done so, Mr. Rosenblum continues, the court should have denied the motion because of Travelbyus' failure to comply with Local Rule 56.1 and because Mr. Rosenblum's uncontested Rule 56.1 statement of facts created genuine issues for trial.

As a general rule, on a Rule 12(b)(6) motion, the court may consider only the plaintiff's complaint. Rule 10(c) provides, however, "[a] copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes." Fed. R. Civ. P. 10(c). This court's precedent makes clear that this rule includes a limited class of attachments to Rule 12(b)(6) motions. "[D]ocuments attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim. Such documents may be considered by a district court in ruling on the motion to dismiss." *Wright v. Assoc. Ins. Cos. Inc.*, 29 F.3d 1244, 1248 (7th Cir. 1994). This exception is "aimed at cases interpreting, for example, a contract." *Levenstein v. Salafsky*, 164 F.3d 345, 347 (7th Cir. 1998). "The court is not bound to accept the pleader's allegations as to the effect of the exhibit, but can independently examine the document and form its own conclusions as to the proper construction and meaning to be given the material." 5 Wright & Miller, *Federal Practice & Procedure: Civil 2d*, § 1327 at 766 (1990).

Although Mr. Rosenblum did not refer explicitly to the Employment Agreement in his complaint, that agreement nevertheless falls within the exception. From Travelbyus' point of view, the contract under review is the combination

of the Acquisition Agreement and the Employment Agreement. In moving to dismiss on the ground that the contract, read in this matter, requires that the parties resort to arbitration, Travelbyus is entitled to take the position that Mr. Rosenblum has appended only a part of the relevant instrument and to append what it contends is the remainder. It would have been impossible for the district court or for this court to evaluate the disagreement between the parties without having all of the documentation. It is impossible to render the necessary adjudication without reference to the Employment Agreement. *See Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993).

## B. The Arbitration Clause

We turn now to the central controversy in this appeal: whether the Employment Agreement's arbitration clause governs this action for breach of the Acquisition Agreement. The district court concluded that this arbitration clause did govern a dispute under the Acquisition Agreement and dismissed the case in favor of arbitration. Mr. Rosenblum submits that, although the Employment Agreement was a condition precedent to the Acquisition Agreement and the two agreements were executed on the same day, they cover different subject matter; neither agreement is incorporated into the other. Travelbyus, however, contends that the broad language of the Employment Agreement's arbitration clause, and the strong federal policy favoring arbitration, require that the district court's decision be affirmed. We review the district court's grant of a Rule 12(b)(6) motion de novo. *See Help at Home, Inc. v. Med. Capital, L.L.C.*, 260 F.3d 748, 752 (7th Cir. 2001).

There is a strong federal policy favoring arbitration embodied in the Federal Arbitration Act. *See* 9 U.S.C. §§ 1 et

seq.; *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 625 (1985). Nevertheless, arbitration is a matter of contract between the relevant parties; no party can be required to arbitrate absent an agreement to do so. *See First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995). To determine whether a contract's arbitration clause applies to a given dispute, federal courts apply state-law principles of contract formation.[2] *See id.* at 944. The Supreme Court of Illinois has written recently that: "The parties to an agreement are bound to arbitrate only those issues they have agreed to arbitrate, as shown by the clear language of the agreement and their intentions expressed in that language. An arbitration agreement will not be extended by construction or implication." *Salsitz v. Kreiss*, 761 N.E.2d 724, 731 (Ill. 2001) (citations omitted).

There are two possible sources of Mr. Rosenblum's obligation to arbitrate this dispute. First, if the Employment Agreement's arbitration clause is broad enough, by its own terms, to encompass disputes under the Acquisition Agreement, then Mr. Rosenblum is required to arbitrate this dispute. Second, if the arbitration clause is not broad enough to reach this dispute, Mr. Rosenblum still is obligated to arbitrate if the Acquisition Agreement incorporates the Employment Agreement by reference. We shall evaluate each of these possibilities. First, we shall

---

[2] By their terms, the contracts are governed by the laws of Canada and of the Province of Ontario. *See* R.3, Ex.A art. 1.5; R.12, Ex.B § 21. Neither party has argued that Canadian or Ontario law differs materially from Illinois law on this issue, and both parties have argued Illinois law to the district court and on appeal. We therefore shall apply the law of Illinois. *See Brunswick Leasing Corp. v. Wisc. Cent., Ltd.*, 136 F.3d 521, 525-26 (7th Cir. 1998).

address some aspects of the documents relevant to either of these possibilities. Then we shall address each with more particularity.

### 1.

At the outset of our inquiry, we think it is important to examine the two contracts as a whole and to determine their relationship to each other. In undertaking such an evaluation, it becomes immediately evident (and the parties do not disagree) that these agreements were both necessary, but self-contained, as components of a comprehensive business transaction. While the contracts are related, they are not two sections of the same agreement; they are separate, free-standing contracts. Each contract delineates rights and duties independent of the other and that pertain to a particular subject matter. One contract may be fully performed while the other is breached. The employment contract deals exclusively with Mr. Rosenblum's employment. By contrast, the Acquisition Agreement concerns the parties' rights and duties with respect to Mr. Rosenblum's sale of Muffin to Travelbyus.

Our view of the agreements' relationship is supported further by the internal structure of each contract. Both agreements contain noncompete provisions. Article 11 of the Acquisition Agreement is substantially similar to Sections 11 and 12 of the Employment Agreement. *Compare* R.3, Ex.A art. 11, *with* R.12, Ex.B §§ 11-12. If, as the district court held and Travelbyus argues on appeal, the Employment Agreement is incorporated into the Acquisition Agreement, one of these provisions is wholly superfluous. Indeed, both contracts are complete on their own. There are no terms missing from either contract that must be filled in with borrowed terms from the other. Both are

supported by consideration and meet all of the conditions of a valid contract. Finally, the contracts deal with distinct subject matter and contemplate different periods of completion. The Employment Agreement governs what the parties intend to be an ongoing relationship, with provisions for renewal, severance and ongoing compensation. The Acquisition Agreement governs the sale of Muffin to Travelbyus. Performance of the contract would have been complete had Travelbyus made the required payment to Mr. Rosenblum on December 15, 2000.

The parties' deal consisted of two agreements, one covering the sale of Muffin to Travelbyus, the other concerning Mr. Rosenblum's employment with Muffin after its acquisition by Travelbyus. The contracts are separate, and there is no indication that the parties intended that the terms of the Employment Agreement apply to disputes arising under the Acquisition Agreement.

## 2.

We now focus on the arbitration clause in the Employment Agreement to ascertain whether there is any indication that the parties intended that it apply to disagreements under the Acquisition Agreement.

The arbitration clause is contained in Section 15 of the Employment Agreement. That section provides two mechanisms for the resolution of disputes. Section 15(a) states, in part, that "[e]ither party may at any time notify the other party of an intention to discuss or dispute any matter connected with this Agreement. Within five days of receiving such notification, the parties shall each appoint a representative . . . [who] shall meet within the following five days in an attempt to settle the matter at issue." R.12, Ex.B § 15(a). Section 15(b) describes the process of binding

arbitration to which the parties must submit if the informal mediation of Section 15(a) fails. The scope of the arbitration clause is defined as well by Section 15: "Except for any matters for which this Agreement expressly provides otherwise, any matter in dispute under or relating to this Agreement shall, unless settled in the manner provided by subsection 15(a), be finally resolved by binding arbitration." R.12, Ex.B § 15.

The arbitration clause applies, by its terms, to "any matter in dispute under or relating to *this* Agreement." R.12, Ex.B § 15 (emphasis added). The Employment Agreement therefore covers all aspects of Mr. Rosenblum's employment relationship with Travelbyus. It simply does not purport to cover the acquisition issues that form the basis of Mr. Rosenblum's claims here. The arbitration clause is not susceptible to an interpretation that includes this dispute, which has nothing to do with Mr. Rosenblum's employment with Travelbyus. To include Mr. Rosenblum's claims within the scope of this arbitration clause would expand the operation of that clause beyond its express terms and beyond the intent of the parties. The arbitration clause cannot be read to include Mr. Rosenblum's claims under the Acquisition Agreement.

### 3.

Finally, we explore whether the Acquisition Agreement incorporates the Employment Agreement or its arbitration clause. "Generally, one instrument may incorporate another instrument by reference." *Turner Constr. Co. v. Midwest Curtainwalls, Inc.*, 543 N.E.2d 249, 251 (Ill. App. Ct. 1989). "The contract must show an intent to incorporate the other document and make it part of the contract itself." *Id.* "When determining under Illinois law whether some-

thing is incorporated into a contract, we limit our inquiry to the four corners of the contract." *Atl. Mut. Ins. Co. v. Metron Eng'g & Constr. Co.*, 83 F.3d 897, 901 (7th Cir. 1996).

Travelbyus invites our attention to Article 1.4 of the Acquisition Agreement. This provision, Travelbyus contends, incorporates the Employment Agreement and its arbitration clause into the Acquisition Agreement. Article 1.4, reads:

> **1.4 Entire Agreement.** This Agreement together with the other agreements and documents to be delivered pursuant to this Agreement constitute the entire agreement between the Parties pertaining to the subject matter hereof and supersede all prior agreements, understandings, negotiations and discussions, whether oral or written, of the Parties (including without limitation, the LOI) and there are no warranties, representations or other agreements between the Parties in connection with the Transaction except as specifically set forth in this Agreement and any document delivered pursuant to this Agreement. No supplement, modification, waiver or termination of this Agreement shall be binding unless executed in writing by the Parties to be bound thereby.

R.3, Ex.A art. 1.4. The district court found incorporation in two other places as well. First, the court relied on the definitions section. The Acquisition Agreement defines "Employment Agreement" as "the employment agreement to be executed by the Seller and the Target [Muffin] contemporaneous herewith." *Id.* art. 1.1; *see* R.17, Dist. Ct. Op. at 1. Second, the court found support for incorporation in Article 9.5. Article 9 is entitled "Seller's Conditions Precedent" and 9.5 states: "The Employment Agreement shall have been executed by all parties thereto, on terms and conditions satisfactory to the parties thereto." R.3, Ex.A art. 9.5.

None of the three provisions relied upon by the district court incorporates the Employment Agreement by reference. There is no doubt that the Acquisition Agreement refers to the Employment Agreement, but there is no "intention to incorporate the document and make it a part of the contract" on the face of the Acquisition Agreement itself. *Arneson v. Bd. of Tr., McKendree Coll.*, 569 N.E.2d 252, 256 (Ill. App. Ct. 1991). Indeed, Article 1.4 is not an incorporation clause at all; rather, it is a merger clause.[3] A merger clause does not incorporate other contracts by reference, rather, a merger clause negates the impact of earlier negotiations and contract drafts, and states that the written contract is the complete expression of the parties' agreement. *See Bock*, 257 F.3d at 707. "[T]he presence of a merger clause is strong evidence that the parties intended the writing to be the complete and exclusive agreement between them." *L.S. Heath & Son, Inc. v. AT&T Info. Sys., Inc.*, 9 F.3d 561, 569 (7th Cir. 1993). A merger clause, in effect, assures the parties that their entire agreement is memorialized in the written contract, and permits either party to invoke the parol evidence rule to exclude evidence of additional contractual terms not included in the written agreement.[4]

---

[3] *See, e.g., Bock v. Computer Assocs. Int'l*, 257 F.3d 700, 706-07 (7th Cir. 2001) (discussing the meaning and effect of a merger clause); *Echo, Inc. v. Whitson Co., Inc.*, 52 F.3d 702, 707 (7th Cir. 1995) (discussing purpose of merger clause); *Betaco v. Cessna Aircraft Co.*, 32 F.3d 1126, 1132-33 (7th Cir. 1994) (same); *Barille v. Sears Roebuck & Co.*, 682 N.E.2d 118, 122-23 (Ill. App. Ct. 1997) (same); *J & B Steel Contractors, Inc. v. C. Iber & Sons, Inc.*, 642 N.E.2d 1215, 1220 (Ill. 1994) (same).

[4] The Employment Agreement also contains a merger clause:

This Agreement constitutes and expresses the whole agreement of the parties hereto with respect to the employ-

(continued...)

The Acquisition Agreement's merger clause does reference "other agreements and documents to be delivered pursuant to this Agreement", but does not incorporate any of them. R.3, Ex.A art. 1.4. The parties debate whether the Employment Agreement is one of those "agreements and documents" referenced in Article 1.4, but their disagreement is irrelevant. Article 1.4 does not incorporate any of those documents by reference. Indeed, as is the case in all merger clauses, the reference to those other documents in Article 1.4 simply assures the continued vitality of those documents and prevents their being merged into the Acquisition Agreement.[5]

Similarly, the two other provisions relied upon by the district court do not indicate that the parties had any intention to incorporate the Employment Agreement by reference. The Acquisition Agreement's definition of the

---

[4] (...continued)

> ment of the Executive by the Company and with respect to any matters or things herein provided for or hereinbefore discussed or mentioned with reference to such employment. All promises, representations, collateral agreements and understandings relative thereto not incorporated herein are hereby superseded and cancelled by this Agreement.

R.12, Ex.B § 19. This clause also contains no indication that the Employment Agreement incorporated any provision of the Acquisition Agreement. Therefore, neither merger clause gives any indication that the parties intended to incorporate either contract into the other. The Employment Agreement's merger clause does not reference the Acquisition Agreement at all.

[5] Article 1.9 of the Acquisition Agreement does incorporate a series of schedules as "integral part[s]" of the Agreement, but that list does not include the Employment Agreement. R.3, Ex.A art. 1.9.

Employment Agreement, which "means the employment agreement to be executed by the Seller and the Target contemporaneous herewith," identifies the Employment Agreement but does not incorporate its terms into the Acquisition Agreement. R.3, Ex.A art 1.1. Article 9.5 makes the Employment Agreement a condition precedent to the execution of the Acquisition Agreement but, like the other provisions cited by the district court and Travelbyus, is silent on incorporation. Mere reference to another contract or document is not sufficient to incorporate its terms into a contract. There must be an express intent to incorporate, and there is no such expression here.

## Conclusion

As a matter of law, the Employment Agreement is not incorporated by reference into the Acquisition Agreement. Thus, the Employment Agreement's arbitration clause does not apply to Mr. Rosenblum's action for breach of the Acquisition Agreement. Accordingly, the judgment of the district court is reversed and the case is remanded for further proceedings consistent with this opinion. Mr. Rosenblum may recover his costs of this appeal.

REVERSED and REMANDED

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*