# In the

# United States Court of Appeals

## For the Seventh Circuit

No. 11-2089

CHRISTOPHER L. GORE,

*Plaintiff-Appellee*,

*v.*

ALLTEL COMMUNICATIONS, LLC, AND
ALLTEL COMMUNICATIONS, LLC, as
Successor in Interest to SOUTHERN ILLINOIS
CELLULAR CORP., doing business as
FIRST CELLULAR SOUTHERN ILLINOIS,

*Defendants-Appellants*.

Appeal from the United States District Court
for the Southern District of Illinois.
No. 3:10-cv-00735—**David R. Herndon**, *Chief Judge.*

ARGUED OCTOBER 31, 2011—DECIDED JANUARY 19, 2012

Before KANNE and WILLIAMS, *Circuit Judges*, and
DEGUILIO, *District Judge.*\*

───────

\* Of the United States District Court for the Northern District
of Indiana, sitting by designation.

WILLIAMS, *Circuit Judge.*   Christopher Gore brought this class action against his wireless services provider, Alltel Communications, LLC, for failing to honor the terms of an agreement he previously made with a company Alltel acquired, but Alltel moved to compel arbitration in light of a broad arbitration clause included in its service agreement with Gore. The district court denied that motion, concluding that a genuine dispute existed regarding the scope of the arbitration clause. We disagree. Because Gore's claims are based in part on the products and services he received under the Alltel Agreement, we find that the arbitration clause applies, and so we reverse.

## I. BACKGROUND

Gore entered into a long-term wireless service agreement with Southern Illinois Cellular Corporation, d/b/a First Cellular Southern Illinois ("First Cellular") on October 6, 2005. By that agreement (the "First Cellular Agreement"), First Cellular contracted to provide wireless telephone and other multimedia services to Gore for a two-year period in exchange for Gore paying approximately $40 each month. Gore subscribed to four different wireless lines under the First Cellular Agreement. Three lines used First Cellular's Code Division Multiple Access ("CDMA") technology, and the other used the company's Global System for Mobile Communications ("GSM") technology. The First Cellular Agreement did not contain an arbitration clause.

On May 1, 2006, Alltel acquired First Cellular. At the time, the First Cellular Agreement had approximately 17 months remaining before its scheduled expiration. Gore claims that before the First Cellular Agreement expired Alltel began dismantling First Cellular's GSM network, causing the network and its features to be periodically unavailable. Gore's three CDMA lines were fully transitioned to the Alltel network at some point in October 2006. However, Alltel informed Gore that because it "did not use GSM technology, [Gore's GSM line] could not be transitioned to Alltel" until some later date. The GSM line was transitioned in April 2007.

In November 2006, Alltel sent Gore an invoice, dated November 3, 2006, showing a balance of $100.77 and indicating that Gore's credit card would be charged that amount on November 23, 2006. On page 2 of the invoice, under a "General Information" heading, the following text appeared (in approximately size 7 font):

> These services are subject to Alltel's terms and conditions, which are found on the back of your customer service agreement and at www.alltel.com. By paying this bill, you acknowledge that you are bound by these terms and conditions.

Page 9 of the ten-page invoice included an "Acceptance" provision that explained:

> You accept this Agreement when you do any of the following: (a) give us your written or electronic signature, (b) tell us orally or electronically that you accept, or (c) use or attempt to use any of the

Equipment or Services. If you have never used the services before and do not wish to be bound by these Terms and Conditions, do not begin using the Services or Equipment and notify us immediately.

And the last page of the invoice contained the arbitration provision at issue in this case (in approximately size 6 font):

ANY DISPUTE ARISING OUT OF THIS AGREE-MENT OR RELATING TO THE SERVICES AND EQUIPMENT MUST BE SETTLED BY ARBITRA-TION . . . . ALL CLAIMS MUST BE ARBITRATED INDIVIDUALLY, AND THERE WILL BE NO CONSOLIDATION OR CLASS TREATMENT OF ANY CLAIMS. . . .

(all capitalizations in original).

The invoice made clear, "This 'Agreement' includes [the] Terms and Conditions and your Service Order." It defined "Service(s)" as "any services you have asked us to provide you through this agreement." And it declared that "Equipment" included "any communication equip-ment or accessories you purchase or lease from us or use in any manner in connection with your Services." Gore's credit card was charged, and Alltel took that as Gore's acceptance of described terms and conditions.

When Alltel completed the transition of Gore's lines to the Alltel network, Gore's GSM line was rendered "completely inoperable." At the time, approximately 6 months remained on the First Cellular Agreement.

Alltel informed Gore that he needed to purchase an Alltel-compatible phone and agree to a new wireless service plan or pay a $250 termination fee to disconnect his service. Gore purchased an Alltel phone, entered into a new service contract with Alltel, and agreed to pay $109 per month for a wireless service plan similar to the plan for which he contracted with First Cellular.

Gore initiated this class action suit against Alltel, as First Cellular's successor in interest, in an Illinois state trial court. He asserts a handful of claims against both First Cellular and Alltel. His first claim charges Alltel with breach of contract for rendering his GSM phone and equipment useless, refusing to honor the features and prices of the First Cellular Agreement, and seeking to enforce the early termination provision despite First Cellular's breach. Gore's second claim is for deceptive trade practices under Illinois law; he alleges that First Cellular knowingly and deceptively induced him and other customers to enter into 24-month agreements despite knowing that the services would soon be rendered inoperable. His third claim is for civil conspiracy. It is predicated on an alleged agreement between First Cellular and Alltel to unlawfully breach the First Cellular Agreement after Alltel's acquisition of First Cellular. His next claim seeks to hold First Cellular liable for aiding and abetting Alltel in carrying out the fraudulent scheme. And his final claim is one for unjust enrichment, through which he seeks disgorgement of the profits and revenues that First Cellular obtained as a result of its failure to disclose the acquisition plan and its intent to eliminate the GSM service, and the profits

that Alltel made by refusing to honor the First Cellular Agreement.

Alltel removed this case to the Southern District of Illinois under the Class Action Fairness Act, 28 U.S.C. § 1453. It then moved to compel arbitration. The district court denied the motion without prejudice. In doing so, the court found that the parties genuinely disputed whether they entered into an arbitration agreement, when they did so, and whether Gore's causes of action fell within the scope of that agreement. As a result, the court ordered discovery and a trial under section 4 of the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1 *et seq.* Alltel moved for reconsideration, and it requested that the court alter or amend its order to make clear that discovery should be limited to the question of whether the parties entered into a valid arbitration agreement. Gore opposed Alltel's motion for reconsideration but agreed to limited discovery. The court denied Alltel's motion for reconsideration and ordered discovery on the merits concurrent with discovery on the arbitration issue. Alltel filed this interlocutory appeal pursuant to section 16 of the FAA. 9 U.S.C. § 16(a)(1)(A) (permitting an appeal to be taken from an order "refusing a stay of action under section 3 of this title").

## II. ANALYSIS

The primary issue on appeal is whether this dispute falls within the scope of the Alltel Agreement's arbitration clause. Alltel argues that the district court erred by denying its motion to compel arbitration. Gore disagrees,

and responds that even if the arbitration clause encompasses his claims, applying it to this dispute would be procedurally unconscionable. We address both issues in turn.

## A.  The Broad Scope of the Arbitration Clause

Title 9, section 2 of the United States Code (section 2 of the FAA) provides, in pertinent part:

> A written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. This provision embodies both a "liberal federal policy favoring arbitration and the fundamental principle that arbitration is a matter of contract." *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1745 (2011) (citations and internal quotation marks omitted). But because arbitration is a matter of contract, "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002) (citation and internal quotation marks omitted). Rather, "courts must place arbitration agreements on an equal footing with other contracts, and enforce them according to their terms." *Concepcion*, 131 S. Ct. at 1745 (citation omitted).

To determine whether a contract's arbitration clause applies to a given dispute, federal courts apply

state-law principles of contract formation. *Rosenblum v. Travelbyus.com Ltd.*, 299 F.3d 657, 662 (7th Cir. 2002). Once it is clear, however, that the parties have a contract that provides for arbitration of some issues between them, any doubt concerning the scope of the arbitration clause is resolved in favor of arbitration as a matter of federal law. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983); *Miller v. Flume*, 139 F.3d 1130, 1136 (7th Cir. 1998). "To this end, a court may not deny a party's request to arbitrate an issue 'unless it may be said with positive assurance that the arbitration clause is not susceptible of an inter-pretation that covers the asserted dispute.'" *Kiefer Specialty Flooring, Inc. v. Tarkett, Inc.*, 174 F.3d 907, 909 (7th Cir. 1999) (quoting *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582-83 (1960)). We review *de novo* a district court's grant or denial of a motion to compel arbitration. *Id.*

In cases like this, where the parties enter into two agreements—though only one contains an arbitration clause, and the plaintiff brings a cause of action based, at least in part, on conduct contrary to the agreement that does not have the arbitration clause, the parties can be compelled to arbitrate only if (1) the clause itself is broad enough to encompass their dispute, or (2) the agreement containing the clause incorporates the other by reference. *Rosenblum*, 299 F.3d at 662. The Alltel Agreement does not incorporate the First Cellular Agreement by reference. Alltel's insistence that the Alltel Agreement's merger clause does so is unavailing because "[a] merger clause does not incorporate other

contracts by reference," and one contract incorporates another only if there is "an express intent to incorporate." *Id.* at 665-66. We must decide, therefore, only whether the clause itself is broad enough to encompass this dispute. And it is undisputed that Illinois law governs our inquiry. *See Tinder v. Pinkerton Sec.*, 305 F.3d 728, 733 (7th Cir. 2002).

In Illinois, "the objective in interpreting a contract is to ascertain and give effect to the intent of the parties." *Carey v. Richards Bldg. Supply Co.*, 856 N.E.2d 24, 27 (Ill. App. Ct. 2006) (citation omitted). Most important are "the objective manifestations of the parties, including the language they used in the contract." *Id.* (citation omitted). Where the contract's language is plain, the agreement should be enforced as written. *Id.* (citation omitted).

The arbitration clause in this case provides that "[a]ny dispute arising out of this agreement or relating to the services and equipment must be settled by arbitration." "Service(s)" means "any services [Gore has] asked [Alltel] to provide [Gore] through this agreement"; and "Equipment" refers to "any communication equipment or accessories [Gore] purchase[s] or lease[s] from [Alltel] or use[s] in any manner in connection with [Gore's] Services." The language is unambiguous: any dispute "arising out of" the Alltel Agreement or "relating to the services and equipment" that Gore asked for under that agreement must be arbitrated.

We have previously said that "'arising out of' reaches all disputes having their origin or genesis in the contract,

whether or not they implicate interpretation or performance of the contract per se." *Sweet Dreams Unlimited, Inc. v. Dial-A-Mattress Int'l, Ltd.*, 1 F.3d 639, 642 (7th Cir. 1993) (emphasis omitted). But "relating to" does not substantially broaden the scope of an arbitration clause containing "arising out of" language. *See id.* ("[W]e do not believe that adding 'relating to' to 'arising out of' substantially broadens the scope of the clause as applied to the present complaint."). Even so, we read both "arising out of" and "relating to" broadly. *E.g., Kiefer*, 174 F.3d at 909.

In *Kiefer*, for example, we questioned whether such language appearing in distributorship agreements was broad enough to reach a dispute stemming from a breach of an employment agreement that did not have an arbitration provision but was executed as a condition precedent to the distributorship agreements. *Kiefer*, 174 F.3d at 908. There, we held that "[b]ecause a significant relationship exists between Kiefer's claim of tortious interference and the arbitration provision contained in the parties' distributorship agreements," the dispute fell within the scope of the arbitration provision. *Id.* at 910-11. We characterized "arising out of or relating to" language as "extremely broad and capable of an expansive reach." *Id.* at 909. Such broad language "necessarily create[s] a presumption of arbitrability," *id.* at 910, which requires that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Mercury Constr.*, 460 U.S. at 24-25. With this presumption of arbitrability squarely in mind, we analyze each of Gore's claims individually to determine

whether they are subject to arbitration. *KPMG LLC v. Cocchi*, 132 S. Ct. 23 (2011) (per curiam) ("[C]ourts must examine a complaint with care to assess whether any individual claim must be arbitrated. The failure to do so is subject to immediate review.").

### 1. Gore's Individual Claims are Subject to Arbitration

Gore's first claim is for breach of contract. He alleges that First Cellular and Alltel breached the First Cellular Agreement by making his GSM phone inoperable before that agreement expired, by not honoring its features and prices through expiration, and by seeking to enforce its early termination provision. It can fairly be said that Gore's breach of contract claim relates only tangentially to the Alltel Agreement. Indeed, had Gore brought suit against First Cellular and alleged specific conduct by First Cellular alone in breach of the First Cellular Agreement, the Alltel Agreement's arbitration clause arguably would not have applied. But Gore sued Alltel as First Cellular's successor in interest, and his breach of contract claim is predicated on action taken by Alltel in connection with the services it provided him under the Alltel Agreement. The Alltel Agreement's arbitration clause applies because Gore's claims are based on Alltel's rendering of his GSM phone inoperable and refusal to honor the terms of the agreement he made with First Cellular. Gore implicitly concedes that Alltel's conduct is at the heart of his breach of contract claim by alleging that Alltel intended to fraudulently

induce members of the putative class to transition from First Cellular to Alltel. Gore's breach of contract claim, as presently constituted, is predicated on the wireless services that he received under the Alltel Agreement not being in conformity with the services he was promised by First Cellular.

Gore argues that this case should follow *AGCO* and *Rosenblum*. *AGCO Corp. v. Anglin*, 216 F.3d 589 (7th Cir. 2000); *Rosenblum*, 299 F.3d 657. We disagree. In both of those cases we were confronted with a similar issue, whether a dispute arising out of one agreement is subject to arbitration under a separate agreement's arbitration clause, but our holdings depended on facts that were significantly different from those presented here. In those cases, the dispute at issue was one wholly arising out of a separate and independent agreement not containing an arbitration clause. Gore's claims do not fit that mold.

In *AGCO*, we held that an arbitrator exceeded its authority by arbitrating claims arising out of a contract that did not contain an arbitration clause, even though the claims related to the subject matter of a separate contract containing an arbitration provision. *AGCO*, 216 F.3d at 596. In that case, Max and Gary Anglin personally guarantied Silver Lake's liabilities to Agricredit under a Retail Finance Agreement ("RFA"), but neither the guaranties nor the RFA provided for arbitration. *Id.* at 591. AGCO agreed to finance Silver Lake, and the Anglins personally guarantied Silver Lake's indebtedness to AGCO. *Id.* The AGCO guaranties contained a

broad arbitration provision requiring arbitration of "*all actions . . . arising out of or directly or indirectly relating to (a) this Guaranty.*" *Id.* (emphasis original). After AGCO acquired Agricredit, and Silver Lake defaulted on the RFAs, AGCO sought arbitration of the dispute between Agricredit and Silver Lake. *Id.* at 592. The issue before the court was whether the arbitration clause in the AGCO guaranties encompassed a dispute over the Anglins' Agricredit guaranties. We found that "the arbitration clause did not seek to incorporate by reference any provisions of the [RFAs] . . . . [And] because the two companies shared no corporate identity as of June 3, 1992, the Anglins had no reason to suspect that their arbitration agreement with AGCO would expand to encompass a dispute with Agricredit, a nonsignatory*." Id.* at 594 (citation omitted). As a result, we held that the Agricredit guaranties were not subject to mandatory arbitration. *Id.* at 595.

We reached the same conclusion in *Rosenblum* despite different facts. *Rosenblum*, 299 F.3d at 664. In that case, Michael Rosenblum and Travelbyus.com Ltd. executed an agreement for Travelbyus to purchase Rosenblum's travel publication business. *Id.* at 659. As a condition precedent to the acquisition agreement, the parties also executed an employment agreement, under which Rosenblum would remain employed at his former company. *Id.* at 660. The employment agreement contained a broad arbitration provision, mandating arbitration for "any matter in dispute under or relating to this Agreement." *Id.* The acquisition agreement did not have an arbitration provision. *See id.* After Travelbyus breached the terms of the acquisition agreement, Rosen-

blum sued. *See id.* Explaining that "[t]he parties' deal consisted of two . . . contracts [that] are separate, and there is no indication that the parties intended that the terms of the Employment Agreement apply to disputes arising under the Acquisition Agreement," we held that "[t]he arbitration clause cannot be read to include Mr. Rosenblum's claims under the Acquisition Agreement." *Id.* at 663-64.

This case is different from *AGCO* and *Rosenblum* because Gore's breach of contract claim is interlinked with both the First Cellular Agreement and the Alltel Agreement. In *AGCO*, "the Anglins' dispute involve[d] a third party, Agricredit, which [was] not a signatory to the arbitration agreement." *AGCO*, 216 F.3d at 594. And the contracts under review in *Rosenblum* were "both necessary, but self-contained . . . components of a comprehensive business transaction. . . . The employment contract deal[t] exclusively with Mr. Rosenblum's employment . . . [and] the Acquisition Agreement concern[ed] the parties' rights and duties with respect to . . . [the] sale." *Rosenblum*, 299 F.3d at 663. Because Gore alleges facts suggesting that his breach of contract claim is based on both Alltel's and First Cellular's conduct in providing him wireless services, we cannot say that the claim arises out of the First Cellular Agreement alone. Resolving, as we must, our doubt in favor of arbitrability, *Mercury Constr.*, 460 U.S. at 24-25, we find that Gore's breach of contract claim falls within the scope of the Alltel Agreement's arbitration clause.

For the same reasons, Gore's third, fourth, and fifth claims suffer the same fate as his first. His civil conspiracy

claim is predicated on an alleged agreement between First Cellular and Alltel to unlawfully funnel First Cellular customers into service agreements with Alltel. His aiding and abetting claim is based on First Cellular assisting Alltel with this allegedly fraudulent scheme. And his unjust enrichment claim seeks disgorgement of the profits that First Cellular and Allltel reaped as a product of the fraud. All of these claims implicate the services and equipment that Gore, and other members of the putative class, received under the Alltel Agreement. Given our broad reading of "arising out of and relating to," we are confident that these claims also fall within the scope of the arbitration clause. *Welborn Clinic v. MedQuist, Inc.*, 301 F.3d 634, 639 (7th Cir. 2002) ("[W]e have naturally been willing to read these admittedly expansive clauses quite broadly to include all manner of claims tangentially related to the agreement, including claims of fraud, misrepresentation, and other torts . . . ." (citing *Kiefer*, 174 F.3d at 909-10)).

### 2. Gore's Consumer Fraud Claim "Arises Out Of" the Alltel Agreement

Gore's second claim, however, is slightly different from the rest. Count II of his complaint alleges that First Cellular violated the Illinois Consumer Fraud and Deceptive Practices Act and the Uniform Deceptive Trade Practices Act by "requir[ing] GSM Sub-Class Members to purchase GSM phone and/or other equipment as part of the First Cellular Agreement . . . despite knowing [and not disclosing] that the phones/equipment and

wireless service under the Agreements would soon be rendered inoperable or ineffective by the transition of the GSM network." This allegation, on its face, relates only to First Cellular's allegedly fraudulent conduct. But digging deeper into the particularized factual allegations of the fraud shows the claim is inextricably linked to the services he received under the Alltel Agreement.

First, the omission that Gore insists First Cellular had a duty to disclose was its intention to transition the GSM users to the Alltel network post-acquisition. Second, Gore alleges that Alltel acquired First Cellular with an intent to breach the First Cellular Agreements without compensating the GSM users, and with an intent to "impos[e] additional fees, charges, and expenses . . . in excess of those permitted under the First Cellular Agreements." Finally, Gore alleges that Alltel required the putative class members to enter into "new wireless agreements on less-favorable terms" and "threatened [the class members] that if they did not purchase the new equipment and/or enter into the less-favorable extended service contracts with Alltel . . ., [they] would be charged an early termination fee of $250." But for Alltel's conduct in transitioning the First Cellular customers to the Alltel network and allegedly forcing the First Cellular customers to enter into the less-favorable Alltel Agreement, Gore's consumer fraud claim would be a simple breach of contract claim. As we have made clear in the past, "Whether a particular claim is arbitrable depends not upon the characterization of the claim, but upon the relationship of the claim to the subject matter of the arbitration clause. Were the rule otherwise,

a party could frustrate any agreement to arbitrate simply by the manner in which it framed its claims." *In re Oil Spill by the "Amoco Cadiz" off the Coast of France March 16, 1978*, 659 F.2d 789, 794 (7th Cir. 1981). Given the substance of Gore's factual allegations, his consumer fraud claim is one arising out of or relating to the Alltel Agreement. That claim too must therefore be arbitrated.

### B.  The Arbitrator Must Decide if the Agreement is Unconscionable

The only other issue is whether application of the arbitration clause to this dispute is procedurally unconscionable. This issue, however, is one properly resolved by the arbitrator in the first instance because Gore attacks as unconscionable the entire Alltel Agreement, not just the arbitration clause itself. *See Prima Paint Corp. v. Flood & Conklin Mfg.*, 388 U.S. 395, 403-04 (1967) ("[I]f the claim is fraud in the inducement of the arbitration clause itself—an issue which goes to the 'making' of the agreement to arbitrate—the federal court may proceed to adjudicate it. But the statutory language does not permit the federal court to consider claims of fraud in the inducement of the contract generally. . . . [A] federal court may consider only issues relating to the making and performance of the agreement to arbitrate."). Gore's oral argument confirmed his broad challenge to the Alltel Agreement as a whole. Faced with a similar challenge in *Sweet Dreams*, we followed the Supreme Court's holding in *Prima Paint*, 388 U.S. at 403-04, and ordered that the dispute be resolved by the arbitrator. *Sweet*

*Dreams*, 1 F.3d at 641. The same result must obtain here. Because Gore is challenging as procedurally unconscionable the entire Alltel Agreement, not just the arbitration clause itself, we remand this case to the district court to stay the proceedings pending arbitration.[1]

## III. CONCLUSION

For the above-stated reasons, the district court's denial of the Alltel's motion to compel arbitration is REVERSED and this case is REMANDED for further proceedings consistent with this opinion.

---

[1] Alltel also appealed the district court's expansive discovery order, but counsel for Gore conceded at oral argument that the district court should have limited discovery to the narrow issue of the arbitration clause's enforceability and applicability to the present dispute. Because we reverse the district court's denial of Alltel's motion to compel arbitration, we need not address the scope of the discovery order.