**James SANATO, Plaintiff,**

v.

**SEARS, ROEBUCK AND COMPANY, Defendant.**

No. 15–cv–7486

United States District Court, N.D. Illinois, Eastern Division.

Signed 02/11/2016

Timothy John Coffey, The Coffey Law Office, P.C., Naperville, IL, for Plaintiff.

Thomas Michael Wilde, Emily Collins Fess, Vedder Price P.C., Chicago, IL, for Defendant.

## ORDER

Judge Amy J. St. Eve

Defendant Sears, Roebuck and Company ("Sears") has moved the Court to compel arbitration under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq.* (R.6). For the following reasons, the Court denies Defendant's motion [6].

## BACKGROUND

Plaintiff James Sanato filed this action against Sears in August 2015, alleging unlawful termination under the Age Discrimination in Employment Act of 1967 ("ADEA"), as amended, 29 U.S.C. § 621 *et seq.* (R.1, Compl.). He alleges that he worked at Sears from January 2005 until December 2012, when Sears terminated his employment for "false and pre-textual reasons." (*Id.* ¶¶ 8–12).

On October 26, 2015, Sears moved to compel arbitration. (R.6). Sears argues that: (1) Plaintiff received notice of an arbitration policy/agreement (the "Agreement") on or about April 7, 2012, during the course of his employment; (2) Plaintiff did not opt out of the Agreement; and (3) Plaintiff is contractually bound to arbitrate this employment discrimination claim. (R.7, Br. In Support of Motion to Compel at 1–2). There is no dispute that Plaintiff received notice of the Agreement and its terms. (*Id.* at 4, 6–7; R.12, Br. Opposing Motion to Compel at 7 ("[Plaintiff] acknowledged receipt of the [A]greement, admits that he discussed it ...")). Similarly, there is no dispute that, *if* Plaintiff is bound by the Agreement, his ADEA claim falls within its scope. (R.7, Br. In Support of Motion to Compel at 9). The parties dispute, however, whether Plaintiff returned the Opt–Out Form within 30 days of receipt and, thus, whether he did—or did not—legally accept the Agreement.

Sears argues that there is "no evidence that [Plaintiff] returned the Opt–Out Form within 30 days," submitting sworn declarations from its compliance personnel to substantiate this claim. (R.7, Br. In Support of Motion to Compel at 7–8; R.7–1, Kaselitz Decl.; R.7–2 Torrence Decl.). Sears states that it checked all Opt–Out records in its possession, including those which were rejected as untimely and those without proper identification. (*Id.*). None were Plaintiff's. (*Id.*). Sears argues that these efforts show "to a reasonable degree of certainty" that Plaintiff did *not* opt out of the Agreement. (R.7, Br. In Support of Motion to Compel at 8; R.7–2 Torrence Decl. ¶ 7).

Plaintiff asserts that he *did* fax the Opt–Out Form within 30 days of receipt, submitting his sworn declaration to that effect. (R.12, Br. Opposing Motion to Compel at 1–2; R.12–1, Sanato Decl. ¶ 4). Plaintiff states that he reviewed the Agreement, discussed its "unfair" nature with other Sears' employees, and decided to opt out of its terms. (*Id.*). Plaintiff asserts that he timely faxed the Opt–Out Form and "put the completed [form] along with the fax confirmation sheet in [his] locked desk at work." (*Id.*). Plaintiff claims that, a few months later, he was suspended without notice and, shortly thereafter, terminated. (R.12–1, Sanato Decl. ¶¶ 4–8). He states that Sears failed to return the Opt–Out Form and fax confirmation sheet, among other documents, to him when he requested his personnel file and other property post-termination. (*Id.*). According to Plaintiff, Sears also destroyed some of his belongings, including his desk, (*id.* ¶ 9), and failed to produce (or mention) the Agreement in response to (i) his counsel's request for personnel records, or (ii) his EEOC charge. (R.12, Br. Opposing Motion to Compel at 3–4, 8–9).

## LEGAL STANDARD

The FAA, specifically 9 U.S.C. § 2, "embodies both a liberal federal policy favoring arbitration and the fundamental

principle that arbitration is a matter of contract." *Gore v. Alltel Commc'ns, LLC*, 666 F.3d 1027, 1032 (7th Cir. 2012) (citation omitted). "[A]n enforceable agreement to arbitrate must first exist between the parties before the courts can compel arbitration." *Stone v. Doerge*, 245 F.Supp.2d 878, 881 (N.D. Ill. 2002), *aff'd*, 328 F.3d 343 (7th Cir. 2003). In other words, "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Gore*, 666 F.3d at 1032 (citation omitted). Once a district court "is satisfied that the parties agreed to arbitrate," however, the court "must promptly compel arbitration." *Tinder v. Pinkerton Sec.*, 305 F.3d 728, 735 (7th Cir. 2002) (citing 9 U.S.C. § 4); *see also Gore*, 666 F.3d at 1032 ("Once it is clear ... that the parties have a contract that provides for arbitration ... any doubt concerning the scope of the arbitration clause is resolved in favor of arbitration as a matter of federal law").

When the existence of a binding arbitration agreement is in dispute, the party "opposing arbitration must identify a triable issue of fact concerning the existence of the agreement in order to obtain a trial on the merits of the contract." *Tinder*, 305 F.3d at 735. The applicable standard is akin to a Rule 56 summary judgment standard, and the district court must accept the non-movant's evidence as true, drawing all reasonable inferences in his favor. *Id.* The non-movant cannot avoid compelled arbitration, however, "by generally denying the facts upon which the right to arbitration rests[.]" Rather, "the party must identify specific evidence in the record demonstrating a material factual dispute for trial." *Id.*

## ANALYSIS

Plaintiff argues that he did not accept the Agreement, thus rendering it un-

enforceable against him. *See Nat'l Prod. Workers Union Ins. Trust v. Cigna Corp.*, 665 F.3d 897, 901 (7th Cir. 2011) ("Under Illinois state law, an enforceable contract requires an offer, acceptance, consideration, and mutual assent").[1] The resolution of the present motion depends on whether Plaintiff, as the party opposing arbitration, has raised a triable issue of fact as to whether he sent a timely Opt–Form Form.

Plaintiff swears, under penalty of perjury, that he faxed the Opt–Out Form within 30 days of receipt. (R.12–1, Sanato Decl. ¶ 4). Defendant argues that this self-serving testimony is insufficient to raise a genuine issue of material fact as to contract formation. (R.7, Br. In Support of Motion to Compel at 7–8). In particular, Defendant argues that "[Plaintiff] provides no fax confirmation page, and, indeed, does not even attest that the fax successfully went through." (R.13, Reply Br. In Support of Motion to Compel at 2). Defendant ignores, however, that Plaintiff specifically averred that he put the completed form and the fax confirmation sheet in his locked desk, and that, a few months later, Sears suspended him, prevented him from accessing his personal property, and later destroyed his desk. (R.12–1, Sanato Decl. ¶¶ 4–8). These particularized allegations distinguish this case from *Tinder*, where the Seventh Circuit held that plaintiff's generalized allegation that she "[did] not remember receiving or seeing the [arbitration] brochure" was insufficient to "raise a genuine issue whether the brochure was distributed to her." *Tinder*, 305 F.3d at 736.

These specific allegations also distinguish this case from *Grynko v. Sears Roebuck & Company*, where plaintiff's affidavit merely stated that she mailed and faxed the Opt–Out Form to Sears. *See*

---

1. The record supports the elements of (i) offer and (ii) consideration with respect to the Agreement. (R.7, Br. In Support of Motion to Compel at 6–7).

*Grynko v. Sears Roebuck & Co.*, No. 1:13 CV 2482, 2014 WL 66495, at *5 (N.D. Ohio Jan. 6, 2014) (deeming affidavit insufficient to raise a genuine issue of fact); *id.* R.6–1 (Affidavit of Aurika A. Grynko). Accepting—as the Court must—Plaintiff's detailed declaration as true, and drawing all reasonable inferences in his favor, *Tinder*, 305 F.3d at 735, the Court presumes that Plaintiff cannot proffer the evidence Defendant now demands (the Opt–Out Form and/or the fax confirmation sheet, and/or Plaintiff's notes memorializing his discussions about the Agreement) because Sears refused to return his personal property, destroyed his desk, and/or did not include these papers in his personnel file.

Although, as in *Grynko*, Sears has presented evidence that it searched its records to confirm its non-receipt of the Opt–Out form, (R.7–2, Torrence Decl.), Plaintiff here has identified specific evidence indicating his intention to opt out of the Agreement and his actual transmission of the Opt–Out Form. That this evidence comes only from Plaintiff's sworn declaration does not preclude a finding of triable fact. As this Court previously observed, "The Seventh Circuit has repeatedly rejected the argument that plaintiffs may not rely on 'self-serving' evidence to create a material factual dispute." *Mete v. Sears Holdings Corp.*, No. 14 C 4169, 2014 WL 6613051, at *4 n.1 (N.D. Ill. Nov. 21, 2014) (citing *Hill v. Tangherlini*, 724 F.3d 965, 967 (7th Cir. 2013)); *see also Marr v. Bank of Am., N.A.*, 662 F.3d 963, 968 (7th Cir. 2011) ("[U]ncorroborated, self-serving testimony, if based on personal knowledge or firsthand experience, may prevent summary judgment against the non-moving party, as such testimony can be evidence of disputed material facts"). After reviewing the record, the Court finds that Plaintiff has raised a genuine issue concerning whether he agreed to arbitrate. This finding precludes compelled arbitration under the FAA. *See Tinder*, 305 F.3d at 728.

## CONCLUSION

For the stated reasons, the Court denies Defendant's motion to compel arbitration and to stay these proceedings.